WILLIAM R. PORTH, INDIVIDUALLY AND AS ADMINISTRATOR, C. T. A. OF JERRY
HILDA PORTH v. ROBERT EDWARD PORTH, MARGARET CHURCH
PORTH, PEGGY SUE PORTH, CAROLYN BORCHARDT, DOROTHY
BORCHARDT, GERALDINE BORCHARDT, MICHAEL BORCHARDT,
FREDA SANDBERG, VELMA BUCKINGHAM MAKI, VIRGINIA
KRESS, RUTH BORCHARDT FINCH, LUCY COOPER, DACA MARIE
JOHNSON, KAY GILLIAM, SHERI MEHLEN, DOROTHEA BOR-
CHARDT, WILLIAM BORCHARDT, ARTHUR BORCHARDT, JAMES
J. BOOKER, SAMUEL M. WHITT AND WIFE, BLANCHE COLLINS
WHITT, WILLIAM V. DOSS, J. C. TUCKER, SR., AND NORMAN
TUCKER, D/B/A J. C. TUCKER & SONS, PRUDENTIAL INSURANCE
COMPANY OF AMERICA, FIRST UNION NATIONAL BANK, AND
LAWYERS TITLE INSURANCE CORPORATION, ANY AND ALL UN-
KNOWN HEIRS OF JERRY HILDA PORTH AND ANY AND ALL OTHER
PERSONS, BORN OR UNBORN WHO NOW HAVE OR MAY HAVE AT ANY TIME
IN THE FUTURE ANY RIGHT, TITLE OR INTEREST IN THE PROPERTIES OF THE
DECEDENT, JERRY HILDA PORTH, AND ROBERT E. PORTH

No. 68SC157

(Filed 5 February 1969)

1. **Descent and Distribution § 6— wrongful acts barring property
rights — construction of statute**

   G.S. Ch. 31A, entitled "Acts Barring Property Rights," must be con-
   construed in the light of the long established policy of this State that
   no man shall be permitted to take advantage of his own wrong or to
   acquire property as the result of his crime.

485

**2. Husband and Wife § 15— incidents of tenancy by entirety**

Where husband and wife own real property as tenants by the entirety, the husband is solely entitled, to the exclusion of the wife, to the possession, income and usufruct of such property during their joint lives.

**3. Descent and Distribution § 6; Constitutional Law § 23— acts barring property rights — forfeiture of vested rights**

In providing that where husband is the slayer of his wife he shall hold all of the entirety property during his life subject to pass upon his death to the estate of the wife, G.S. 31A-5(2) recognizes husband's right to the lifetime possession and use of entirety property and thereby avoids the possibility that the statute might be considered unconstitutional as working a forfeiture of a vested property right for crime.

**4. Descent and Distribution § 6— acts barring property rights — murder of wife by husband — restraint upon alienation**

The provision of G.S. 31A-5(2) that the husband-slayer of his wife shall "hold" all of the entirety property during his life subject to pass upon his death to the estate of the wife, held not to bar the alienation of the entire title to the property by joint conveyance of the slayer-husband and the heirs of the decedent, the word "hold" being used in the same sense as when used in the habendum clause of a deed.

**5. Deeds § 12— construction of "hold" in habendum clause**

The word "hold" as used in the habendum clause of a deed is never construed to place a restraint on alienation.

**6. Deeds § 12— restraint upon alienation**

It is the established policy of our law to prevent undue restraint upon or suspension of the right of alienation.

**7. Descent and Distribution § 6— G.S. 31A-5 — "estate" defined**

The word "estate" as used in G.S. 31A-5 means those persons, other than the slayer, who succeed to the rights of the decedent either by testate or intestate succession, as the case may be.

**8. Descent and Distribution § 6; Estates § 3— murder of wife by husband — time of vesting of wife's estate**

In statute providing that husband-slayer of his wife shall hold all of the entirety property during his life subject to pass upon his death to the estate of his wife, the words "pass upon his death" refer exclusively to possession and enjoyment of the property and not to vesting in interest, and the persons entitled to succeed to wife's estate are to be determined as of the actual date of her death and not as of the subsequent date when the husband's life estate terminates upon his death. G.S. 31A-5(2).

**9. Descent and Distribution § 6— determination of wife's estate**

In view of statutory presumption that, for purposes of distributing the estate of decedent, the husband-slayer of his wife shall be deemed to have died immediately prior to the death of the decedent, G.S. 31A-4, the words "the estate of the wife" as used in G.S. 31A-5(2) mean the estate of the murdered wife as the same comes into existence at the instant of her death.

**10. Wills § 44— determination of time of class**

Generally, where there is a bequest to one for life and after his decease to the testator's next of kin, the next of kin who are to take are the persons who answer that description at the death of the testator and not those who answer that description at the death of the first taker.

**11. Descent and Distribution § 6— murder of wife by husband — joint bank account**

Where, at the time of wife's murder by her husband, there existed a joint bank account subject to a survivorship contract between the decedent and her husband, the proper disposition of the account should direct that the slayer-husband have only the income during his lifetime from his one-half share of the account, subject to the rights of his creditors, and that at his death the principal should pass to the estate of his deceased wife. G.S. 31A-6(a).

**12. Executors and Administrators § 5— motion for removal of administrator**

Motion in declaratory judgment action to remove plaintiff as administrator of his mother's estate on the ground that plaintiff is no longer a resident of this State is a collateral attack and is properly denied; such question must be presented by direct proceedings before the clerk of Superior Court who, as probate judge, has exclusive original jurisdiction to hear and decide a motion to remove an administrator for cause. G.S. 28-32.

APPEALS by defendant Philip E. Lucas, Guardian *ad litem*, and by defendant James J. Booker, from *Johnston, J.,* 27 November 1967 Session of FORSYTH Superior Court.

This is a civil action brought under G.S., Chap. 1, Art. 26, by the Administrator c. t. a. of the estate of Jerry Hilda Porth for a declaratory judgment to determine the rights of the parties in certain properties of the decedent and in certain matters in connection with settlement of her estate. The material facts relevant to the questions presented by these appeals were established by stipulations of the parties and by findings of the trial court and are not in dispute.

Jerry Hilda Porth, a resident of Forsyth County, N. C., died 13 August 1965. In September 1965 her husband, Robert Edward Porth, was charged with her murder. On 25 February 1966 he was convicted of first-degree murder of his wife and on 3 February 1967 the conviction was affirmed by the North Carolina Supreme Court.

In addition to her husband, the decedent was survived by her son, William R. Porth, who was her only child, and by her mother, her sister, and two brothers. The son, William R. Porth, is married to Margaret Church Porth, and after the death of his mother two children were born to the son and his wife: a daughter, Peggy Sue Porth, born 4 August 1966, and a son, born in September 1967. The

decedent left a holographic will which disposed of certain specified items of personal property but which contained no residuary clause and made no disposition of any interest in real property.

At the time of her death, Jerry Hilda Porth held an interest as tenant by the entirety with her husband in two pieces of real property in Forsyth County. One of these, known as the Briarcliff Road property, had been conveyed to Robert E. Porth and wife, Jerry Porth, by deed dated 17 July 1956, and at the time of decedent's death was subject to a mortgage. The other tract, known as the Shallowford Hills property, had been conveyed to Robert E. Porth and wife, Jerry Porth, by three deeds, each dated 9 March 1959, and at the time of decedent's death was subject to a materialmen's lien in favor of J. C. Tucker & Sons, who were in process of constructing a dwelling thereon pursuant to a contract made with decedent and her husband.

Subsequent to decedent's death and after her husband had been charged with her murder but before his conviction, her husband, Robert E. Porth, and her son, William R. Porth, and his wife, joined in execution of a deed dated 27 January 1966 conveying the Briarcliff Road property to Samuel M. Whitt and wife, and William V. Doss, for a sales price of $29,500.00. In this transaction the grantors were represented by Attorney James J. Booker, who at the time was also representing Robert E. Porth in the murder case then pending against him. The net proceeds of the sale remaining after provision was made for the mortgage and certain expenses incident to the sale was divided into two equal portions. Out of one portion the sum of $8,000.00 was paid to James J. Booker and applied on his attorney's fee for representing the husband in the murder case and the remainder of that portion was applied toward expenses of that case and other miscellaneous expenses of the husband. Out of the other portion the sum of $3,000.00 was placed in an escrow bank account pursuant to an agreement between James J. Booker and Lawyers Title of North Carolina, Inc., and the balance was paid to the decedent's estate or is held by plaintiff pending further orders of the court. Plaintiff's complaint requested a determination by the court as to the validity of the sale by decedent's surviving husband and son of the Briarcliff Road property and instructions as to plaintiff's duties and responsibilities as to such property or the proceeds of such sale.

Following decedent's death and on 9 February 1966, J. C. Tucker & Sons, contractors, filed in the office of the Clerk of Superior Court of Forsyth County a notice of lien against the Shallowford Hills

property in the amount of $4,672.29 with interest, being the balance claimed to be due from the decedent and her husband on their contract for construction of the residential building on said property. On 5 August 1966 said contractors filed suit in the Superior Court of Forsyth County against Robert E. Porth, William R. Porth as Administrator c. t. a. of the Estate of Jerry Hilda Porth, and against William R. Porth and his wife as individuals, asking for judgment for the amount claimed and that the Shallowford Hills property be sold to satisfy such judgment and lien. Plaintiff's complaint in the present action for a declaratory judgment requested a determination by the court as to the persons entitled to the Shallowford Hills property, as to whether such property or the proceeds from a sale thereof is subject to payment of debts and costs of administration of the Estate of the decedent, and as to the duties and responsibilities of the plaintiff administrator in regard to said property or the proceeds of the sale thereon during the lifetime of the husband.

At the time of her death decedent and her husband had a joint checking account in Wachovia Bank & Trust Company. In connection with this account there was in existence at the time of her death a survivorship contract signed by decedent and her husband. Plaintiff requested instructions of the court as to what disposition should be made of this checking account.

Plaintiff's complaint also alleged facts and requested a determination by the court regarding certain other properties in which the decedent held an interest at the time of her death and regarding certain policies of insurance on her life, but since no question relative to any of these is presented on appeal, no further reference to any of these matters is required.

The defendants in this action are the husband, daughter-in-law, grandchildren, mother, sister, brothers, legatees and other persons interested in decedent's estate or in properties in which she held an interest at the time of her death, including the purchasers of the Briarcliff Road property and the attorney who had represented the husband and son in connection with the sale of such property and who had also represented the husband in connection with the murder case. On motion of the plaintiff, a guardian *ad litem* was appointed to represent two of the defendants who are minors and to represent all unknown heirs of the decedent, *in esse* or *in posse*, and any and all other persons not now in being or who are under any disability who may become interested in the properties which are the subject of this action.

Answers were filed by or on behalf of several of the defendants,

but reference is made only to those pleadings which raise questions presented on these appeals. The answer filed by the purchasers of the Briarcliff Road property alleged that all persons having any interest in such property had joined in the conveyance to them for a valuable consideration, and these defendants prayed that this action be dismissed as to them. The guardian *ad litem* filed answer in which he took the position that the sale of the Briarcliff Road property was not valid under G.S. 31A-5 and that title to said property should be restored in order that it might hereafter pass to the estate of the decedent at the time of the death of her surviving husband. The guardian *ad litem* similarly contended as to the Shallowford Hills property that under G.S. 31A-5 title should be held by the husband for his life, to pass upon his death to the estate of his deceased wife, subject to determination of the validity of the materialmen's lien being asserted by J. C. Tucker & Sons.

James J. Booker also filed answer and filed a motion that William R. Porth, plaintiff herein, be removed as administrator c. t. a. of the estate of his mother on the ground that he was no longer a resident of North Carolina. James J. Booker also filed motion that the attorneys for the administrator c. t. a. be required to withdraw from the case because of an alleged conflict of interest. Both of these motions were denied.

The trial judge, after hearing evidence and receiving stipulations of the parties, entered judgment making findings of fact substantially as above set forth, and concluding as a matter of law that both the Briarcliff Road and the Shallowford Hills properties had been held by the decedent and her husband as tenants by the entirety and that title to said properties was at the date of decedent's death on 13 August 1965, and at all times thereafter, subject to the provisions of Chapter 31A of the General Statutes of North Carolina. As to the Briarcliff Road property the court adjudged that title vested in the estate of Jerry Hilda Porth at the time of her death and that the person or persons constituting her heirs as of that date were the persons entitled to said property, subject to the right of the defendant, her husband, Robert E. Porth, to hold all of said property during his lifetime; that the sale and conveyance by Robert E. Porth and by William R. Porth, the latter being the only heir at law of Jerry Hilda Porth, was lawful and binding on the parties to this action and vested a fee simple title in the grantees, Samuel M. Whitt and wife, and William V. Doss; that the net proceeds from the sale of said property should be paid to the administrator of the estate of Jerry Hilda Porth, to be distributed to William R. Porth, individually, as the only heir of Jerry Hilda Porth, subject to the

value of the life interest of Robert E. Porth in such net proceeds, which life interest should be computed pursuant to the tables set forth in the North Carolina General Statutes and paid to the said Robert E. Porth; and that the portion of such proceeds as is payable to William R. Porth shall be subject to North Carolina inheritance taxes, debts, and costs of administration of the estate of Jerry Hilda Porth. As to the Shallowford Hills property, the court concluded that the materialmen's lien of J. C. Tucker & Sons was a valid lien; that subject to such lien title vested in the estate of Jerry Hilda Porth, and the person or persons constituting her heirs as of the date of her death are entitled to said property subject to the right of the defendant Robert E. Porth to hold all of said property during his lifetime; that upon sale of said property under the materialmen's lien any surplus proceeds should be paid to the estate of Jerry Hilda Porth to be distributed to William R. Porth, individually, as the only heir of Jerry Hilda Porth, subject to the value of the life interest of Robert E. Porth. As to the joint checking account in Wachovia Bank & Trust Company in the name of Mr. and Mrs. Robert E. Porth, the court concluded that one-half of the balance should be paid to the defendant, Robert E. Porth, subject to his liability for funeral bills and other debts of the decedent constituting necessaries for which he is liable as husband of the decedent, and the remaining one-half should be paid to the administrator c. t. a. to be held as an asset of the estate of Jerry Hilda Porth pursuant to the provisions of G.S. 31A-6.

From judgment in accord with these conclusions, the guardian *ad litem* and the defendant, James J. Booker, appealed, assigning errors.

*Womble, Carlyle, Sandridge & Rice, by Charles F. Vance, Jr., and John L. W. Garrou, for plaintiff appellee.*

*McKeithan & Graves, by J. H. McKeithan, for defendant appellees, Samuel M. Whitt and wife, Blanche Collins Whitt and William V. Doss.*

*W. Dunlop White, Jr., for defendant appellee, Lawyers Title of North Carolina, Inc.*

*James J. Booker for himself as defendant appellant.*

*Jenkins & Lucas, by R. Kenneth Babb, for defendant appellant Philip E. Lucas, Guardian Ad Litem.*

PARKER, J.

APPEAL OF THE GUARDIAN AD LITEM: The appeal of the guardian *ad litem* brings forward three assignments of error: (1) That the trial court erred in holding valid the conveyance of the Briarcliff Road property by the surviving husband and son of the decedent and in directing distribution of the net proceeds of such sale in the manner set forth in the judgment; (2) that the court erred in determining that title to the Shallowford Hills property vested in the heirs of the decedent as of the date of her death and in directing distribution of any surplus proceeds from a sale of such property in accordance with that determination; and (3) that the court erred in the manner in which it directed distribution of the balance in the joint checking account in the name of decedent and her husband. Determination of the questions presented requires an interpretation of the provisions of Chapter 31A of the General Statutes, which is entitled "Acts Barring Property Rights," and which was enacted by Chapter 210 of the Session Laws of 1961 and became effective 1 October 1961.

[1] The North Carolina Supreme Court has long recognized as a basic principle of law and equity that no man shall be permitted to take advantage of his own wrong or to acquire property as the result of his crime. *In Re Estate of Perry*, 256 N.C. 65, 123 S.E. 2d 99; *Garner v. Phillips*, 229 N.C. 160, 47 S.E. 2d 845; *Parker v. Potter*, 200 N.C. 348, 157 S.E. 68; *Bryant v. Bryant*, 193 N.C. 372, 137 S.E. 188. The statute we are now called on to interpret must be construed in the light of this long established public policy. G.S. 31A-15 expressly provides that "(t)his chapter (G.S., Chap. 31A) shall not be considered penal in nature, but shall be construed broadly in order to effect the policy of this State that no person shall be allowed to profit by his own wrong." The particular section of the statute with which we are first concerned and which is controlling on the questions presented by the guardian *ad litem's* first two assignments of error, is G.S. 31A-5, which provides as follows:

"Where the slayer and decedent hold property as tenants by the entirety:

"(1)  If the wife is the slayer, one half of the property shall pass upon the death of the husband to his estate, and the other one half shall be held by the wife during her life, subject to pass upon her death to the estate of the husband; and

"(2)  If the husband is the slayer, he shall hold all of the property during his life subject to pass upon his death to the estate of the wife."

**[2, 3]**   It is firmly established in North Carolina that where husband and wife own real property as tenants by the entirety, the husband is solely entitled, to the exclusion of the wife, to the possession, income, and usufruct of such property during their joint lives. *Nesbitt v. Fairview Farms, Inc.,* 239 N.C. 481, 80 S.E. 2d 472; *Davis v. Bass,* 188 N.C. 200, 124 S.E. 566; *West v. Railroad,* 140 N.C. 620, 53 S.E. 477. G.S. 31A-5 recognizes this distinction in the rights held by the husband as compared with the rights held by the wife in entirety property by providing that the slayer-husband shall hold *all* of the property during his life subject to pass upon his death to the estate of the wife, whereas the slayer-wife is to hold only *one-half* of the property during her lifetime subject to pass upon her death to the estate of the husband, while the other one-half of the property in such case shall pass upon the death of the husband to his estate. In preserving the slayer-husband's right to hold all of the property during his life, G.S. 31A-5(2) recognizes his right to the lifetime possession, income, and usufruct, of the property, and thereby avoids the possibility that the statute might be considered unconstitutional as working a forfeiture of a vested property right for crime. See, Bolich, *Acts Barring Property Rights,* 40 N.C.L. Rev. 175, at 201-205.

**[4]**   In the case presently before us, appellant guardian *ad litem* contends in connection with his first assignment of error that the language of the statute providing that if the husband be the slayer, "he shall hold all of the property during his life," is mandatory, and therefore that the slayer-husband in this case had no lawful right or power to join in a conveyance of the Briarcliff Road property. We do not so interpret the statute. The quoted language was employed by the Legislature, not for the purpose of barring any alienation of the property until after the slayer-husband's death, but in order to recognize and preserve the husband's lifetime rights in the property and thereby avoid the constitutional problem referred to above. The Legislature clearly intended that even the slayer-husband should not forfeit what was always recognized as his — the right to possession and income from the property for his lifetime.

**[4-6]**   We do not believe that the statute, correctly interpreted, bars the alienation of the entire title to the property by joint conveyance of the slayer-husband and the heirs of the decedent. To so interpret the statute would run contrary to the established policy of our law, which is to prevent undue restraint upon or suspension of the right of alienation. See, *Mercer v. Mercer,* 230 N.C. 101, 52 S.E. 2d 229. We do not presume that the Legislature intended to do

something that is against the long established public policy of this
State, and the language of the statute does not require such a con-
struction. The words "shall hold," as used in the statute, were not
intended to effect a complete restraint on alienation during the hus-
band's lifetime. On the contrary, the word "hold", as used in the
statute, is used in the same sense as when used in the habendum
clause of a deed. Certainly the word "hold" as used in the habendum
clause of a deed is never construed to place a restraint on alienation,
and the very words used in this statute, "hold all of the property
during his life subject to pass upon his death to the estate of the
wife," if used in a deed, would not prevent the husband from sell-
ing his life interest in the property. Our law has long recognized that
the slayer-husband cannot convey more than his own interest in the
entirety property and that certainly no conveyance of his can work
a detriment to the rights of the estate of his deceased wife. For that
reason it was held in *Bryant v. Bryant, supra,* that the slayer-hus-
band "holds the interest of his deceased wife in the property as a
trustee for her heirs at law; that he should be perpetually enjoined
from conveying the property in fee; that the plaintiffs should be ad-
judged the sole owners, upon the appellant's death, of the entire
property as the heirs of their deceased mother. . . ." That case
arose when the slayer-husband attempted to sell the *fee* title to lands
previously held by him and his wife by the entireties. This the court
prevented him from doing, but made no suggestion that the husband
could not join with his wife's heirs in order to convey good title to
the property.

[7]   We must next determine the meaning of the word "estate" as
it is used in G.S. 31A-5. The legal significance of this word must be
ascertained from the context in which it appears. *Reid v. Neal,* 182
N.C. 192, 108 S.E. 769. From examination of the entire statute and
giving consideration to the purposes for which it was enacted, we
believe it is clear and we so hold that the word "estate" as used in
G.S. 31A-5 means those persons, other than the slayer, who succeed
to the rights of the decedent either by testate or intestate succession,
as the case may be. To accomplish the purpose of G.S. 31A-5 and
consistent with the clear language of G.S. 31A-4, the slayer cannot
be included in this class. In cases in which the decedent has made
testamentary disposition of the real property involved, this interpre-
tation gives effect to the decedent's will. If there is no will, or if, as
in the case before us, the decedent left a will but made no disposi-
tion therein of the real property involved, the decedent's "estate"
consists of those persons who become entitled to succeed to the de-

cedent's property under our intestate succession laws. In either event under G.S. 31A-4 the slayer is not included.

**[8]**    Finally we must determine as of what date the roll must be called in order to ascertain the persons entitled as constituting the "estate" of the deceased wife under G.S. 31A-5(2). The guardian *ad litem* contends that the language of the statute that the slayer-husband hold the property during his life "subject to pass upon his death to the estate of the wife," postpones the roll call until the death of the husband. We do not agree.

Our decisions have long recognized the legal distinction between vesting in interest and vesting in possession and enjoyment. For example, in *Rives v. Frizzle,* 43 N.C. 237, Ruffin, C.J., construing a bequest to testator's wife for life and after her death to his lawful heirs, said:

> " '(A)fter,' or 'upon,' the death of the wife, or the like expressions, do not make a contingency, but merely denote the commencement of the remainder, in point of enjoyment. . . . The limitation here is not to such persons 'as may be my heirs at the death of my wife;' but it is to 'my lawful heirs,' simpliciter, and imports, therefore, those who were the heirs at the testator's death, who took in right then, though they were not to take in possession, until the previous benefit, intended for their mother, should terminate by her death."

**[8, 9]**    We hold that the words "pass upon his death" refer exclusively to possession and enjoyment of the property and not to vesting in interest. In effect, the slayer-husband holds a life estate in the property with a vested remainder in the estate of his deceased wife, and the persons entitled to succeed to her estate are to be determined as of the actual date of her death, not as of the subsequent date when the husband's life estate terminates upon his death. This interpretation is further supported by the express language of G.S., Chap. 31A, as well as by reference to the purposes to be achieved by the statute. G.S. 31A-4 provides in part that, for purposes of distributing the estate of the decedent, "(t)he slayer *shall be deemed to have died immediately prior to the death of the decedent. . . .*" In view of this express statutory presumption, it is clear that the words "the estate of the wife" as the same are used in G.S. 31A-5(2) mean the estate of the murdered wife as the same comes into existence at the instant of her death, and the title to the entireties property at that moment passes to those persons who would be entitled to succeed to her interest in such property as of the moment of her death if she had in fact survived her husband, subject only to his

recognized right to "hold" the property during his lifetime. In the case before us, the murdered wife died on 13 August 1965. According to G.S.31A-4, for purposes of distributing her estate, her slayer-husband is deemed to have died immediately prior to that date. The statute makes no attempt artificially to alter the date of the death of the decedent, but provides instead that the acual date of death of the slayer is to be disregarded. Therefore, if the language of the statute is followed, the estate of the decedent is determined at the date of her actual death, and the law calls the roll of the class immediately as of that time; those who can then answer, take.

The correctness of the interpretation of the words "estate of the wife" in G.S. 31A-5(2) as meaning the estate as it came into existence at the moment of her actual death, is further strengthened by an examination of subparagraph (1) of G.S. 31A-5, which deals with the situation when the wife is the slayer. In such case the statute provides that "one half of the property shall pass upon the death of the husband to his estate, and the other one half shall be held by the wife, subject to pass upon her death to the estate of the husband." It is not reasonable to suppose that the Legislature in G.S. 31A-5(1) intended the word "estate" to have one meaning as to one-half of the property and another meaning as to the other one-half. Rather, it is more reasonable to suppose that the word "estate" as twice used in the same sentence was intended to have the same meaning, and that it refers to the estate of the deceased as such estate comes into existence at the moment of actual death.

**[10]** The interpretation which we have here given to G.S. 31A-5(1) and (2) is consistent with the rules of construction applied by our Supreme Court when considering instruments creating future instruments. *Rives v. Frizzle, supra.* As pointed out by Chief Justice Stacy in *Trust Co. v. Lindsay,* 210 N.C. 652, 654, 188 S.E. 94, 95, quoting from Lord Campbell: "Generally speaking, where there is a bequest to one for life, and after his decease to the testator's next of kin, the next of kin who are to take *are the persons who answer that description at the death of the testator,* and not those who answer that description *at the death of the first taker.*" (Emphasis added.)

What we have said above disposes of appellant guardian *ad litem's* first two assignments of error, as to both of which we find the trial court's judgment to be correct.

**[11]** The question presented by appellant guardian *ad litem's* third assignment of error, directed to that portion of the judgment deal-

ing with the joint bank account as to which decedent and her husband had entered into a survivorship contract, is governed by G.S. 31A-6(a), which provides as follows:

"Where the slayer and the decedent hold property with right of survivorship as joint tenants, joint owners, joint obligees or otherwise, the decedent's share thereof shall pass immediately upon the death of the decedent to his estate, and the slayer's share shall be held by the slayer during his lifetime and at his death shall pass to the estate of the decedent. During his lifetime, the slayer shall have the right to the income from his share of the property subject to the rights of creditors of the slayer."

The trial court's judgment was in error insofar as it directed payment of one-half of the checking account to the slayer-husband. The judgment should have directed that the slayer-husband have only the income during his lifetime from his one-half share of the account, subject to the rights of his creditors, and that at his death the principal should pass to the estate of his deceased wife. Plaintiff appellee's brief concedes this is so, and the judgment should be modified accordingly.

APPEAL OF JAMES J. BOOKER: The appeal by defendant, James J. Booker, presents three assignments of error: (1) That the trial court erred in directing that the $3,000.00 held in the escrow account be paid to the estate of the decedent; (2) that the court erred in overruling appellant's motion to remove the plaintiff as administrator c. t. a. of his mother's estate; and (3) that the court erred in overruling appellant's motion to remove plaintiff's counsel from the case. There is no merit in any of these assignments of error.

The $3,000.00 escrow account was set aside from a portion of the proceeds of sale of the Briarcliff Road property solely to protect the title insurance company against creditors and tax claims against decedent's estate; the title insurance company has filed answer disclaiming any interest in the escrow account and appellant James J. Booker has no interest therein except as trustee. There was no error in directing that this fund be paid to the decedent's estate to be distributed in the same manner as the remaining proceeds from the sale of the Briarcliff Road property.

[12] Appellant Booker's motion to remove plaintiff as administrator of his mother's estate on the grounds that plaintiff is no longer a resident of this State is a collateral attack which cannot be made in this action. Such a question must be presented by direct proceed-

ings before the Clerk of Superior Court, who, as probate judge, has exclusive original jurisdiction to hear and decide a motion to remove an administrator for cause. G.S. 28-32; *McMichael v. Procter*, 243 N.C. 479, 91 S.E. 2d 231. Appellant's motion made before the judge in this declaratory judgment action was properly denied.

There was also no error in overruling appellant Booker's motion that counsel for plaintiff be removed on grounds of a conflict in interest. Appellant contends there is a conflict in that counsel representing plaintiff in this case is also representing plaintiff, as an individual, and his father in a separate suit brought against them by the appellant Booker for the purpose of collecting additional attorney's fees allegedly due by reason of Booker's representation of the father in the murder case. We find no relationship between the issues which might arise in that case and those in the present declaratory judgment action, and appellant's motion was properly overruled.

On the appeal of the guardian *ad litem*, the judgment of the trial court is modified so as to direct that the husband be entitled only to the income during his lifetime from one-half of the joint bank account, subject to the rights of his creditors. With that change the judgment is

Modified and affirmed.

On the appeal of the defendant, James J. Booker, we find

No error.

MALLARD, C.J., and BROCK, J., concur.