BASCOM VERNON BELK, JR., PLAINTIFF v. JOSEPH BLOUNT CHESHIRE, V, INDIVIDUALLY AND AS CHESHIRE, PARKER, SCHNEIDER, WELLS & BRYAN, A NORTH CAROLINA PARTNERSHIP, DEFENDANTS

No. COA02-1168

(Filed 5 August 2003)

**Attorneys— legal malpractice—proximate cause**

The trial court did not err in a negligence action alleging legal malpractice arising in the context of a criminal proceeding by granting summary judgment in favor of defendant law firm and one of its partners, because plaintiff failed to demonstrate that his injury proximately resulted from defendants' alleged negligence.

Judge STEELMAN concurring.

Appeal by plaintiff from judgment entered 29 May 2002 by Judge W. Robert Bell in Mecklenburg County Superior Court. Heard in the Court of Appeals 14 May 2003.

*Erwin and Eleazer, P.A., by L. Holmes Eleazer, Jr., Fenton T. Erwin, Jr., and Peter F. Morgan, for plaintiff appellant.*

*Poyner & Spruill LLP, by E. Fitzgerald Parnell, III, and Rebecca B. Wofford, for defendant appellees.*

TIMMONS-GOODSON, Judge.

Bascom Vernon Belk, Jr. ("plaintiff") appeals from an order of the trial court granting summary judgment in favor of the law firm Cheshire, Parker, Schneider, Wells & Bryan ("the Cheshire firm"), a North Carolina partnership, and one of its partners, Joseph Blount Cheshire ("Cheshire") (collectively, "defendants"). For the reasons set forth herein, we affirm the judgment of the trial court.

The facts pertinent to the instant appeal are as follows: On 27 February 2001, plaintiff filed a complaint against defendants in Mecklenburg County Superior Court asserting claims for professional negligence, breach of implied contract, negligent misrepresentation, and breach of fiduciary duty. Defendants thereafter filed a motion for summary judgment, which came before the trial court on 20 May 2002. At the hearing for summary judgment, the evidence tended to show the following: In July of 1997, plaintiff retained defendants to

represent him with respect to federal criminal charges filed against plaintiff in the United States District Court for the Western District of North Carolina in the case of *United States of America v. Bascom Vernon Belk, Jr.* In the course of representation, plaintiff informed Cheshire that he was in fact guilty of the charges against him. Defendants also represented plaintiff with respect to forfeiture claims asserted by the federal government in connection with the criminal charges.

On 22 July 1997, Cheshire informed plaintiff that he had reached a tentative agreement with the federal attorney handling plaintiff's case. The proposed agreement required plaintiff to plead guilty to charges of gambling and money laundering and to forfeit 2.2 million dollars worth of property in exchange for a sentence recommendation of twenty-four months incarceration and waiver of all further forfeiture claims by the federal government. Under the specific terms of the proposed agreement, plaintiff would forfeit certain real property located at 4400 Park Road in Charlotte, North Carolina ("the Belk Building") and forfeit a series of scheduled cash payments representing the difference between the value of plaintiff's interest in the Belk Building and the $2.2 million forfeiture amount.

In response to the proposed agreement, plaintiff informed Cheshire that he preferred to forfeit his interest in various parcels of real property rather than make any cash payments. To that end, defendants developed an alternate proposal involving the forfeiture of certain real property in addition to the Belk Building, including a parcel located at 8106 Lawyers Road, Charlotte ("the Lawyers Road Property"). Plaintiff testified that he advised Cheshire that the Belk Building and the Lawyers Road Property were subject to existing liens, and that any offer of forfeiture should be subject to the assumption of such liens by the government.

Cheshire testified that, on 31 October 1997 after lengthy negotiations, the federal attorney delivered to him the government's "best and final proposal to resolve its claims against" plaintiff. According to Cheshire, this final proposal was a "take-it-or-leave-it" offer, and that no further negotiations would be possible. That same day, Cheshire presented plaintiff with the proposed plea agreement and proposed "Stipulation for Compromise Settlement" ("the settlement agreement") for plaintiff's signature. In the settlement agreement, plaintiff warranted that the Lawyers Road Property was not subject to any existing lien. Contrary to this assertion, however, the Lawyers Road Property was subject to a mortgage balance of $140,000.00

at the time. According to plaintiff, he did not read the settlement agreement before signing it, but "merely relied upon Cheshire's representations as to its contents." Plaintiff testified that he did not learn of the error until he read the settlement agreement in early November of 1997 for the first time. When plaintiff then contacted defendants and advised them of the error, he asserts that Cheshire "assured [him] that the mistake was simply a typographical error on the part of the United States Attorneys' Office and that the problem would be corrected."

On 2 February 1998, plaintiff sent a letter by facsimile to Cheshire informing him that plaintiff had recently received a letter from the United States Department of Justice regarding the Lawyers Road Property. Based on the contents of the letter, plaintiff surmised that the alleged typographical error concerning the existing lien on the Lawyers Road Property had never been corrected, and plaintiff requested that Cheshire contact him in order to resolve the matter. In his response to plaintiff's letter, Cheshire denied any knowledge of an existing lien on the Lawyer's Road Property, and questioned plaintiff's assertion that he signed the settlement agreement without being fully aware of its contents. Cheshire also strenuously denied having ever spoken with plaintiff regarding a lien, or having told plaintiff that the language in the settlement agreement was simply a typographical error. Cheshire advised plaintiff to either pay the balance due on the Lawyers Road Property lien or "have whomever [the federal attorney] told that this was a typographical error work with [the federal attorney] to correct the error immediately."

On 28 May 1998, Cheshire sent plaintiff a letter indicating that the United States Attorneys' Office would not agree to amend the settlement agreement to reflect the existence of a lien on the Lawyers Road Property. Cheshire suggested that plaintiff retain another attorney to represent him for purposes of setting aside the settlement agreement. On 8 December 2000, plaintiff received demands from various lien holders for payment of the $140,000.00 lien on the Lawyers Road Property. Plaintiff filed the instant suit, alleging that defendants' negligence caused him to incur monetary damages.

After considering the evidence, the trial court concluded that there were no genuine issues of material fact, and that defendants were entitled to judgment as a matter of law. From the judgment entered in favor of defendants, plaintiff now appeals.

Plaintiff contends that genuine issues of material fact exist preventing the proper entry of summary judgment in favor of defendants, and that the trial court erred in concluding otherwise. For the reasons stated below, we affirm the judgment of the trial court.

On a motion for summary judgment, the movant has the initial burden of showing that an essential element of the opposing party's claim does not exist as a matter of law or showing through discovery that the opposing party has not produced evidence to support an essential element of the claim. *See Rorrer v. Cooke*, 313 N.C. 338, 354-55, 329 S.E.2d 355, 365-66 (1985). The opposing party must then come forward with a forecast of evidence showing the existence of a genuine issue of material fact with respect to the issues raised by the movant. *See id.* at 360, 329 S.E.2d at 369. In a negligence action alleging legal malpractice, summary judgment for the defendant is proper where the evidence fails to establish negligence on the part of the defendant, establishes contributory negligence on the part of the plaintiff, or establishes that the alleged negligent conduct was not the proximate cause of the injury. *See id.* at 355, 329 S.E.2d at 366.

Generally speaking, an attorney is

> answerable in damages for any loss to his client which proximately results from a want of that degree of knowledge and skill ordinarily possessed by others of his profession similarly situated, or from the omission to use reasonable care and diligence, or from the failure to exercise in good faith his best judgment in attending to the litigation committed to his care.

*Hodges v. Carter*, 239 N.C. 517, 520, 80 S.E.2d 144, 146 (1954). With respect to proximate cause in an action for legal malpractice, the plaintiff must establish that the loss would not have occurred but for the attorney's conduct. *See Rorrer*, 313 N.C. at 361, 329 S.E.2d at 369. Where the plaintiff has lost a lawsuit allegedly due to his attorney's negligence, the burden of demonstrating proximate cause requires the plaintiff to prove that the original claim: (1) was valid; (2) would have resulted in a favorable judgment; and (3) would have been collectible. *Id.*; *Byrd v. Arrowood*, 118 N.C. App. 418, 420, 455 S.E.2d 672, 674 (1995).

In the instant case, plaintiff alleges that defendants' negligence occurred in the course of their representation of plaintiff during a forfeiture proceeding brought by the federal government in connection with federal criminal charges against plaintiff. Plaintiff forfeited his

property pursuant to Title 18, entitled "Crimes and Criminal Procedure," section 981 of the United States Code. Section 981, entitled "Civil forfeiture," states that "[a]ny property, real or personal, involved in a transaction or attempted transaction in violation of . . . section 1956 or 1957 of this title, or any property traceable to such property" is "subject to forfeiture to the United States[.]" 18 U.S.C. § 981(a)(1) (2000). Plaintiff pled guilty to illegal gambling and money laundering in violation of sections 1955 and 1956, respectively, of Title 18 of the United States Code. Because plaintiff's property was connected to his illegal money laundering activities, such property was subject to civil forfeiture under section 981 of Title 18.

> Civil forfeitures, in contrast to civil penalties, are designed to do more than simply compensate the Government [for the harms suffered by the Government as a result of a defendant's conduct]. Forfeitures serve a variety of purposes, but are designed primarily to confiscate property used in violation of the law, and to require disgorgement of the fruits of illegal conduct.

*United States v. Usery*, 518 U.S. 267, 284, 135 L. Ed. 2d 549, 565 (1996). They are not, however, intended as punishment, and therefore do not constitute penal measures in violation of double jeopardy prohibitions. *See id.* at 287-88, 135 L. Ed. 2d at 567-68. Plaintiff asserts that, because the forfeiture proceeding occurred pursuant to section 981, his present claims against defendants should be characterized as an action for legal malpractice arising in a civil, rather than a criminal context. We disagree.

Regardless of whether the forfeiture proceeded pursuant to section 981, it is uncontroverted that plaintiff's property was subject to forfeiture due to his own criminal behavior. As a convicted felon, plaintiff's property was subject to civil *or* criminal forfeiture under section 982 of Title 18 of the United States Code, *see* 18 U.S.C. § 982 (2000), and the federal prosecutor's decision to proceed with the forfeiture claim under section 981 instead of section 982 does not alter the root cause of the forfeiture. Plaintiff does not dispute the fact that he was actually guilty of money laundering and gambling activities in violation of federal law. To ignore these facts and attempt to divorce the forfeiture proceedings from plaintiff's criminal activities, as plaintiff urges, would clearly elevate form over substance. We conclude that, because the forfeiture claim arose in direct connection with the underlying criminal charges for which plaintiff was convicted, any alleged malpractice by defendants in connection with the forfeiture claim must be evaluated as legal malpractice arising in the

context of a criminal rather than civil proceeding. We must now consider whether plaintiff presented sufficient evidence that, but for defendants' alleged negligence in the settlement of the forfeiture claim against plaintiff, he would not have incurred injury.

Because the alleged negligence arose in the context of a forfeiture proceeding, and not in connection with an underlying suit brought by plaintiff, plaintiff contends that the specific proximate cause burden announced in *Rorrer*, requiring the plaintiff to show that the original claim was meritorious and would have resulted in recovery, is inapplicable. Although we agree that the specific standard announced in *Rorrer* does not coincide with the facts of the instant case, its underlying reasoning on the issue of proximate cause in a legal malpractice case remains relevant. "To establish that negligence is a proximate cause of the loss suffered, the plaintiff must establish that the loss would not have occurred but for the attorney's conduct." *Rorrer*, 313 N.C. at 361, 329 S.E.2d at 369. The plaintiff in *Rorrer* could not show proximate cause because she failed to demonstrate that, had her attorney been more diligent, she would have prevailed in her underlying suit. *Id.*; *see also Murphy v. Edwards and Warren*, 36 N.C. App. 653, 660, 245 S.E.2d 212, 217 (concluding that directed verdict in favor of the defendant attorneys was proper in an action for legal malpractice where the plaintiff failed to show that the defendants proximately caused the alleged damages), *disc. review denied*, 295 N.C. 551, 248 S.E.2d 728 (1978).

In the instant case, plaintiff has similarly failed to demonstrate that, absent defendants' alleged negligence, he would not have been liable for payment of the $140,000.00 lien on the Lawyers Road Property. First, it is uncontroverted that the forfeiture claim arose due to plaintiff's criminal activity. Under federal law, *all* of plaintiff's property was subject to forfeiture. *See* 18 U.S.C. §§ 981, 982. To allow plaintiff to now shift the financial burden of his criminal behavior would impermissibly allow plaintiff to profit from his illegal conduct. "The North Carolina Supreme Court has long recognized as a basic principle of law and equity that no man shall be permitted to take advantage of his own wrong or to acquire property as the result of his crime." *Porth v. Porth*, 3 N.C. App. 485, 492, 165 S.E.2d 508, 514 (1969).

Secondly, there is no evidence that the federal attorney handling plaintiff's case would have settled the forfeiture claim without plaintiff's warranty that the properties were free from encumbrances. According to evidence submitted by defendants and uncontradicted

by plaintiff, the federal attorney informed Cheshire that the stipulation for compromise settlement signed by plaintiff was a "take-it-or-leave-it" offer, and that he was unwilling to further negotiate or modify any of its terms.

Finally, although our review of North Carolina case law yields no precedent involving legal malpractice arising in the context of a criminal proceeding, the overwhelming majority of states that have addressed this issue have concluded that "[p]ublic policy . . . dictates an augmented [proximate causation] standard in criminal malpractice actions." *Mahoney v. Shaheen, Cappiello, Stein & Gordan, P.A.*, 143 N.H. 491, 496, 727 A.2d 996, 997 (1999); *see, e.g., Streeter v. Young*, 583 So. 2d 1339, 1340 (Ala. 1991) (affirming summary judgment in favor of the defendant attorney where the plaintiff failed to show that his conviction was the proximate result of the defendant's alleged negligence); *Shaw v. State, Dept. of Admin.*, 861 P.2d 566, 571 (Alaska 1993) ("If a plaintiff in a criminal malpractice action against his former defense attorney has engaged in the criminal conduct he was accused of in the criminal trial, public policy prevents recovery on his part."); *Wiley v. County of San Diego*, 19 Cal. 4th 532, 545, 966 P.2d 983, 991 (1998) (holding that actual innocence is a necessary element of the plaintiff's cause of action in a criminal malpractice action); *Rowe v. Schreiber*, 725 So. 2d 1245, 1249 (Fla. App. 4 Dist. 1999) (a defendant must successfully obtain post-conviction relief for the cause of action to accrue in a case involving the legal malpractice of a criminal defense attorney); *Gomez v. Peters*, 221 Ga. App. 57, 59-60, 470 S.E.2d 692, 695 (1996) (where the underlying action is a criminal trial, the plaintiff is precluded from bringing a legal malpractice claim if he has pled guilty); *Lamb v. Manweiler*, 129 Idaho 269, 272, 923 P.2d 976, 979 (1996) (noting that the plaintiff did not dispute the proposition that actual innocence was an additional element of a criminal malpractice cause of action); *Kramer v. Dirksen*, 296 Ill. App. 3d 819, 822, 695 N.E.2d 1288, 1290 (1998) (holding that under Illinois law a plaintiff must prove his innocence before he may recover for his criminal defense attorney's malpractice); *Hockett v. Breunig*, 526 N.E.2d 995, 999 (Ind. App. 2 Dist. 1988) (summary judgment was properly entered for the defendant attorneys because their conduct was not the proximate cause of the plaintiff's alleged damages); *Ray v. Stone*, 952 S.W.2d 220, 224 (Ky. Ct. App. 1997) (where the plaintiff pled guilty to criminal charges, he could not demonstrate that negligence on the part of his attorney was the proximate cause of his incarceration and alleged damages); *Berringer v. Steele*, 133 Md. App. 442, 484, 758 A.2d 574, 597 (2000) (reasoning that, absent

relief from a conviction or sentence, the criminally convicted plaintiff's own actions are presumably the proximate cause of injury); *Glenn v. Aiken*, 409 Mass. 699, 707, 569 N.E.2d 783, 787 (1991) (in order to recover for attorney malpractice, a plaintiff must prove by a preponderance of the evidence that he is innocent of the crime charged); *State ex rel. O'Blennis v. Adolf*, 691 S.W.2d 498, 503-04 (Mont. 1985); *Morgano v. Smith*, 110 Nev. 1025, 1028-29, 879 P.2d 735, 737 (1994); *Alampi v. Russo*, 345 N.J. Super. 360, 371, 785 A.2d 65, 72 (App. Div. 2001); *Carmel v. Lunney*, 70 N.Y.2d 169, 173, 511 N.E.2d 1126, 1128 (1987) (unless a plaintiff can assert his innocence, "public policy prevents maintenance of a malpractice action against his attorney"); *Bailey v. Tucker*, 533 Pa. 237, 247, 621 A.2d 108, 113 (1993) (plaintiff must prove that he is innocent of the crime charged or any lesser included offense); *Peeler v. Hughes & Luce*, 909 S.W.2d 494, 498 (Tex. 1995); *Adkins v. Dixon*, 253 Va. 275, 282, 482 S.E.2d 797, 802 (stating that actual guilt is a material consideration on issue of proximate cause), *cert. denied*, 522 U.S. 937, 139 L. Ed. 2d 270 (1997); *Harris v. Bowe*, 178 Wis. 2d 862, 868, 505 N.W.2d 159, 162 (1993).

The majority of jurisdictions impose a stricter standard for criminal malpractice actions in apparent recognition of three basic public policy principles: (1) the criminal justice system affords individuals charged with crimes a panoply of protections against abuses of the system and wrongful conviction, including safeguards against incompetent and ineffective counsel; (2) a guilty defendant should not be allowed to profit from criminal behavior; and (3) the pool of legal representation available to criminal defendants, especially indigents, needs to be preserved. Although we decline to adopt a "bright-line" rule in this matter, we conclude that the burden of proof required to show proximate cause in an action for legal malpractice arising in the context of a criminal proceeding is, for public policy reasons, necessarily a high one.

Because plaintiff failed to demonstrate that his injury proximately resulted from defendants' alleged negligence, we hold that the trial court did not err in granting summary judgment to defendants. The judgment of the trial court is hereby

Affirmed.

Judge HUDSON concurs.

Judge STEELMAN concurs in a separate opinion.

STEELMAN, Judge, concurring.

I concur with the majority's decision affirming the trial court's granting of summary judgment in favor of defendants in this matter.

The majority correctly holds it is appropriate to apply a standard for criminal malpractice rather than for civil malpractice because this action arises out of a criminal proceeding. However, it specifically declines to adopt a "bright-line" rule for criminal malpractice cases. The majority concludes that the burden of proof required to show proximate cause in a criminal malpractice case is "necessarily a high one" and that plaintiff failed to meet this burden in the instant case.

Our Supreme Court's previous decisions have addressed legal malpractice only in a civil context. In *Rorrer v. Cooke*, 313 N.C. 338, 329 S.E.2d 355 (1985), the Court set forth a "but for" causation standard to govern legal malpractice cases. Specifically, the standard requires a legal malpractice plaintiff to demonstrate his or her loss would not have occurred but for the attorney's conduct by showing: 1) the original claim was valid; 2) the claim would have resulted in a judgment in the plaintiff's favor; and 3) the judgment would have been collectible. *Rorrer*, 313 N.C. at 361, 329 S.E.2d at 369. The *Rorrer* test is expressed in terms of a civil action, under which the case arose.

Applying the *Rorrer* standard to a criminal context, the legal malpractice plaintiff must demonstrate that the attorney's conduct was the proximate cause of his conviction. However, it would hardly be possible to prove that the loss would not have occurred but for the attorney's negligence if the plaintiff could not establish his actual innocence of the actions underlying the criminal charges.

The vast majority of jurisdictions addressing the question of the standard for criminal malpractice cases have adopted an "actual innocence" standard. In *Mahoney v. Shaheen, Cappiello, Stein & Gordan, P.A.*, 727 A.2d 996 (N.H. 1999), the New Hampshire Supreme Court explained this standard as follows:

> Public policy . . . dictates an augmented standard in criminal malpractice actions. While such an action requires all the proof essential to a civil malpractice claim, a criminal malpractice action will fail if the claimant does not allege and prove, by a preponderance of the evidence, actual innocence. It is not sufficient for a claimant to allege and prove that if counsel had acted differently, legal guilt would not have been established. As a matter

MONIN v. PEERLESS INS. CO.

[159 N.C. App. 334 (2003)]

of law, the gateway to damages will remain closed unless a claimant can establish that he or she is, in fact, innocent of the conduct underlying the criminal charge.

*Mahoney*, 727 A.2d at 998-99 (citation omitted).

The public policy concerns set forth by the majority dictate a more stringent standard for criminal malpractice cases than for civil cases. The actual innocence standard provides a clear, simple rule for our lower courts to follow and is consistent with our Supreme Court's holding in *Rorrer*. Therefore, I would adopt the actual innocence standard for criminal malpractice cases arising under North Carolina law.