BROMION, INCORPORATED
v.
The UNITED STATES.
No. 368–67.

United States Court of Claims.

Decided June 20, 1969.

Alvin A. Simon, Scarsdale, N.Y., attorney of record, for plaintiff. Joseph Sachter, Scarsdale, N.Y., of counsel.

Robert R. Donlan, Washington, D.C., with whom was Asst. Atty. Gen., William D. Ruckelshaus, for defendant. J. Michael Gottesman and Steven L. Cohen, Washington, D.C., of counsel.

Before COWEN, Chief Judge, LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

DURFEE, Judge.

On August 21, 1967, the Armed Services Board of Contract Appeals (hereinafter referred to as the Board or the ASBCA) denied an appeal from a default termination by Bromion, Inc., 67–2BCA, ¶ 6543, pp. 30, 399. Plaintiff is now suing under the Wunderlich Act, 41 U.S.C. §§ 321, 322, to review this decision. Both sides have moved for summary judgment.

Plaintiff was awarded a negotiated contract on April 29, 1966 for 14 electronic testers. A major component of the tester, an "automatic electric stepping switch", was manufactured by Automatic Electric Co., the sole source of supply.

The contract called for delivery of the testers within 60 days of the award, or by June 28, 1966, at a total price of $35,406.00. In response to plaintiff's inquiry, Automatic Electric Co. submitted a quotation on May 20th, showing delivery of the switches in approximately 90 days, which would have been well beyond the June 28th delivery date set by the contract. Plaintiff therefore corresponded with the contracting officer on May 24, 1966, as follows:

The largest sub-component in the system is the automatic electric stepping switch, and since practically all of the parts in the assembly are wired to the stepping switch, it is very difficult to proceed without this switch on hand. Since the supplier of this switch indicates delivery in approximately 90 days, we feel we must request an extension to the contract in order to allow time for the receipt of supplies and the incorporation of the components into our complete test sets.

It is recommended that a 150 day extension to the contract be made in order to allow time for receipt of these supplies. This would place the final delivery date of these units on October 28. As an additional compensation, Bromion is willing to reduce the cost of the contract by .7% ($228).

The contractor's original proposal for a price reduction was not accepted. Thus, on June 27, 1966, the contractor again offered a price reduction in exchange for a time extension, and requested that its proposed extension for 150 days be reconsidered; it also reasserted that this would bring the delivery date to October 28, 1966.

On July 22, 1966, the contracting officer sent a telegram to the contractor, accepting the price reduction offered, and extending the delivery schedule to October 29, 1966. No mention was made of a 150-day extension. A supplemental agreement, Modification No. 1, was eventually entered into by the parties, which incorporated the terms of the telegram. The contractor signed the agreement on August 5, 1966, and took no exception to its wording.

The 14 switches were received by plaintiff on August 31, but because they lacked basic assemblies, they had to be returned. Proper switches were received on October 7th, and on October 18th plaintiff notified the Government that it would be unable to meet the delivery schedule. Bromion, on October 19th, requested a time extension to January 31, 1967, offering a further price reduction. On October 31, 1966, the contracting officer, having considered the latest request for a time extension, issued a notice terminating plaintiff's contract for default.

The contracting officer's decision was appealed to the ASBCA, which found that plaintiff's delay was not excusable, and that Modification No. 1 reflected

what the parties actually bargained for. It therefore denied plaintiff's appeal.

■ Plaintiff is now claiming that the Modification embodied a mutual mistake, that it did not accurately reflect the parties' intent, and that therefore, the Board decision was arbitrary, capricious and not supported by substantial evidence. Upon a careful examination of all the facts and circumstances surrounding the events heretofore described, we conclude that the Board's decision was not arbitrary, or capricious, and was supported by substantial evidence. In addition, the Board's decision is not based on any conclusion of law and thus, under the Wunderlich Act, 41 U.S.C. § 322, its findings are entitled to finality.

When plaintiff first asked for a time extension, it asked for an extension of 150 days, and stated that this would bring the delivery date to October 28. Since the contracted-for-delivery date was June 28, 150 days from then would have in actuality produced a delivery date of November 24. Thus, plaintiff claims that both parties actually intended this latter date, rather than the "mistaken" date of October 28 (or October 29, which was the date set by the contracting officer).

The Board found that, while it was unclear as to how plaintiff arrived at the October 28 date, it was obvious that its request for a 150-day extension was derived from the 90-day delay in the deliveries from Automatic Electric Co., plus the 60 days it would take to fabricate the testers, once plaintiff had all the necessary components. It therefore found that the dominant purpose of the extension was to give the contractor 150 days within which to deliver the product. It also found that such 150-day extension from plaintiff's May 24 request would have yielded an October 21 delivery date. Even though a correct calculation would thus have yielded a date different from October 28 (or 29) the date actually mentioned in the Modification is obviously in closer harmony with Oc-

tober 21 than the date for which plaintiff is arguing, i. e., November 24.

■ It is clear from the chronology of events that the Board's findings are supported by substantial evidence. Plaintiff's request for a time extension was prompted by a May 20th communication from Automatic Electric Co. which alerted plaintiff that delivery of the switches would take place in about 90 days. Thus, when plaintiff sought the extension on May 24th, the 150 days actually required should have yielded the October 21 date. When the contracting officer replied on June 22, and gave a final date of October 29, he was merely giving a date which approximated this 150-day request. In view of how this length of time was probably arrived at, there is no basis for saying that the contracting officer knew or should have known that plaintiff was seeking a November 24 date, and therefore no basis for arguing that he was only mistaken in specifying the wrong date certain. In fact, it would have been unreasonable, in light of the communications back and forth, and the events which necessitated them, for the contracting officer to have set a November 24 delivery date.

■ By asking this court to declare that the ASBCA decision was wrong, plaintiff is in effect asking us to reform this contract. This we cannot do, since "[r]eformation is not a proper remedy for the enforcement of terms to which the defendant never assented; it is a remedy the purpose of which is to make a mistaken writing conform to antecedent expressions on which the parties agreed." 3 Corbin on Contracts § 614, at p. 723 (1960). There is no evidence here that either of the parties agreed to the November 24 delivery date. In fact, the case was submitted to the ASBCA without hearing. If plaintiff had introduced any evidence as to the intent of the parties, we might have been more sympathetic to a plea for reformation. But "a court will not decree reformation unless it has convincing evidence that the parties expressed agreement and an

intention to be bound in accordance with the terms that the court is asked to establish and enforce." *Id.* at p. 725.

Plaintiff also argues that the Board findings are not entitled to finality since they involved issues of law. The Wunderlich Act, 41 U.S.C. § 322, states that "No Government contract shall contain a provision making final on a question of law the decision of any administrative official, representative, or board." This denial of finality to legal conclusions is incorporated into the contract via the disputes clause. Accordingly, plaintiff continues, since the finding of the intent of the parties is a matter of contract interpretation, and thereby a legal question, it is not binding on the court.

■ It should first be made clear just what constitutes a question of law when terms of a contract are examined. The determination as to whether an issue is one of fact or of law is one of the most complex and perplexing questions facing a court. However, it is clear that a finding that a certain word was mentioned in the contract, and that the parties intended to use that word, is a finding of fact. As Corbin states:

The question whether a party ever used the promissory words that are asserted against him is always a question of fact. This is true whether the alleged words were oral or written. *Id.* at § 554, p. 218.

In our case, the ASBCA found what the contracting officer gave as a delivery date in the Modification, and what the contractor agreed to. The Board was not interpreting the legal effect of the contract; it was merely deciding as a fact what was, or was not, actually included in the contract as to its extension. It found only that the parties agreed to the October 29 date, and that they intended to extend the contract 150 days.

Plaintiff cites a number of decisions of this court in support of its contention that the Board made a legal determination. A review of those cases, however, finds this reliance to be misplaced. In Dynamics Corporation of America v. United States, 389 F.2d 424, 182 Ct.Cl. 62 (1968), defendant agreed to order certain minimum quantities specified in the contract schedule, and the question was whether certain orders were "issued" within the time period specified in the contract. In other words, the question involved the timeliness of certain orders. The court held that the Board was deciding the *legal effect* of the terms of the contract when it decided that certain calls were effective, and this determination was not binding on the court.

■ In Hol-Gar Manufacturing Corp. v. United States, 351 F.2d 972, 169 Ct. Cl. 384 (1965) the court again concluded it was not bound by a Board determination. The contract contained several amendments to the specifications, and the Board construed them together so as to decide that a certain feature was required by the contract itself. The court arrived at the same result independently, since whether something is required by contract terms is a legal question, and the Board's finding on this question was not entitled to finality. Similarly, in the instant case, this court is not bound by what the ASBCA said regarding the availability of reformation. It is bound, however, by the Board's finding that the contracting officer offered an extension to October 29, and plaintiff accepted this date, since that factual finding is supported by substantial evidence.

■ Plaintiff next contends that the Government caused the delay by placing a "very high priority order" with plaintiff's sole-source subcontractor, Automatic Electric Co. Under the default clause in the instant contract, failure to deliver is not excusable unless due to causes beyond the control and without the fault or negligence of both the contractor and subcontractor. The Board found that "the Record does not show that the subcontractor's failure to make timely delivery of the switches was ex-

cused by compliance with Government priority orders." Despite plaintiff's assertion that the Government had placed a very high priority order with the subcontractor, there is nothing to indicate that this priority was higher than plaintiff's. Moreover, plaintiff cannot, as he wishes to do, shift the burden of proving the negative upon the Government by baldly asserting that it was within the latter's peculiar knowledge whether the Government's order had a higher priority than plaintiff's. The Armed Services Procurement Regulation assigns DO or DX priority ratings to rated orders. The latter rating has priority over the former. Plaintiff's rating was DO. Defendant's rating could just as easily have been DO as DX, and since plaintiff made no attempt to ascertain the Government's rating, we see no reason to make defendant carry the burden. We therefore uphold the Board on this point as well.

Tied up with the argument as to relative priorities is plaintiff's contention that the failure of the sole-source contractor to make timely delivery brings this case within the ambit of the doctrine of impossibility of performance.

If plaintiff had proven that the Government had placed an order with Automatic Electric with priority over plaintiff's, and had thus exhausted the supply of switches, plaintiff could perhaps prevail, but plaintiff failed to make such proof.

Finally, a plaintiff contends that the October 29 delivery date, being a Saturday, was by custom and usage, not a normal delivery date, and that it was entitled to deliver on Monday, October 31. Of course, the notice of termination for default was issued on October 31, but it is plaintiff's position that it was entitled to the entire day to complete performance.

■ In interpreting the terms of a contract, trade usage should be considered.

\* \* \* [T]he principle is now established in this court (and almost every other court) that in order that the intention of the parties may prevail, the language of a contract is to be given effect according to its trade meaning notwithstanding that in its ordinary meaning it is unambiguous. That is to say that trade usage or custom may show that language which appears on its face to be perfectly clear and unambiguous has, in fact, a meaning different from its ordinary meaning. \* \* \* Gholson, Byars and Holmes Construction Company v. United States, 351 F.2d 987, 999, 173 Ct.Cl. 374, 395 (1965).

Assuming that naming a date certain may still not preclude evidence of trade usage to show that another delivery date was intended, plaintiff has done nothing more than raise the spectre of error on the part of the Board. Having introduced no evidence that trade usage would delay a Saturday delivery date until the next Monday, we have no basis for deciding that the Board was wrong in not even considering this argument. The *Gholson* case, *supra*, spoke of trade usage because unrebutted statements by members of the trade were in evidence. Defendant here denies the existence of any trade usage, and plaintiff's failure to adduce any evidence once again cuts the underpinnings from its argument.

For all the foregoing reasons, we believe that the ASBCA's decision is not arbitrary or capricious, is supported by substantial evidence, and is entitled to finality. Accordingly, defendant's cross motion for summary judgment is granted, plaintiff's motion for summary judgment is denied, and the case is dismissed.