Carlton W. SPENCER, Trustee in Bankruptcy of Investment Funds, Inc., Plaintiff,

v.

Caryl NEWTON and Caryl Newton and New England Merchants National Bank, Trustees Under the Will of Arnold Goodman, Defendants.

Civ. A. No. 72–2908–C.

United States District Court, D. Massachusetts.

June 30, 1978.

---

Marvin R. Finn, Spencer & Stone, Boston, Mass., for plaintiff.

James C. Heigham, Choate, Hall & Stewart, Charles F. Barrett, Nutter, McClennen & Fish, Boston, Mass., for defendants.

## OPINION

CAFFREY, Chief Judge.

### I

This is a civil action brought by plaintiff Carlton W. Spencer, as Trustee in Bank-

ruptcy of Investment Fund, Inc. (IFI), a Massachusetts corporation. The following basic facts are agreed upon by all parties. On December 9, 1970, an involuntary petition in bankruptcy was filed against IFI, and the corporation was adjudicated a bankrupt on February 11, 1971. In the period immediately before its demise, IFI's primary business was making loans to nursing homes. Defendant Caryl Newton, the widow of Arnold Goodman, owned 250 of the 1,710 outstanding shares of IFI stock at the time of her husband's death in 1967. Arnold Goodman, a former officer of IFI, owned 605 shares of IFI common stock at the time of his death. Arnold Goodman had endorsed or guaranteed notes and debentures of IFI exceeding $800,000 in face value, which endorsements and guarantees were outstanding at his death. Defendants New England Merchants National Bank (NEM) and Caryl Newton are the duly appointed Trustees under the will of Arnold Goodman.

The transaction which forms the basis of this litigation arose out of an agreement (the Agreement) between IFI, Caryl Newton, and IFI dated December 31, 1968 and executed on January 17, 1969. Pursuant to the Agreement, IFI redeemed for $60,250 the 250 shares of IFI owned personally by defendant Caryl Newton. In addition, IFI redeemed from defendants Newton and NEM, in their capacities as testamentary trustees, Goodman's 605 shares in IFI for $9,750 plus a note for $136,055. As part of the same Agreement, IFI assigned certain notes and mortgages to defendant-trustees as collateral for, *inter alia*, IFI's payment of the $136,055 note, and for any liability the widow and the trust might incur as a consequence of Arnold Goodman's guarantees and endorsements of IFI obligations. This transaction occurred approximately two years prior to the bankruptcy of IFI.

The trustee in bankruptcy alleges that the above transaction constitutes a fraudulent conveyance under Mass.Gen. Laws ch. 109A, ch. 156B, §§ 45, 61. He seeks to recover from defendants both the purchase price of the IFI common stock redeemed by the corporation, and the collateral securing Arnold Goodman's successors in interest. Briefly summarized, the critical elements which plaintiff must prove are that on the relevant balance sheet dates, IFI was insolvent or was rendered insolvent and IFI did not receive fair consideration for the assets it conveyed or the obligations it incurred.

Since the commencement of this litigation, holders of IFI notes guaranteed by Arnold Goodman have recovered final judgments in the Massachusetts courts against these same defendants. The judgments total in excess of $650,000, or slightly more than the entire corpus of the trust. Approximately one-third of this sum has been paid. Defendants contend that if the trustee in bankruptcy prevails here, the trust will be faced with a further judgment of approximately $200,000 based on the redemption price of its IFI stock. Moreover, they argue that the trust will be deprived of the escrow fund of approximately $450,000 which was intended to protect it against claims of IFI note holders. Defendant Newton allegedly will also be exposed to between $100,000 and $400,000 of strictly personal judgments. Should this occur, defendants assert their only remedy is to stand as unsecured creditors of the bankrupt IFI.

In light of the complexity of the relevant corporate interrelationships and business dealings, this Court referred the case to a Master on July 30, 1976. Paragraph two of the Order of Reference provided:

The Master shall take evidence relevant to the issues raised in the above-entitled action and shall thereafter report her findings of fact to this Court. Together with the report, the Master shall file a transcript of the proceedings and of the evidence and all original exhibits as required by Rule 53, Federal Rules of Civil Procedure.

The Master was not instructed to recommend conclusions of law or a judgment. Fifteen days of hearing before the Master resulted in voluminous testimony and exhibits, and a Report filed on August 4, 1977.

The Report made 296 specific findings and presents ten schedules reflecting IFI's financial condition on the critical dates of December 31, 1968, January 17, 1969, January 31, 1969, June 30, 1969, and July 9, 1969.

All parties have stipulated technical corrections to seven of the Master's findings. In addition, defendants have objected to 83 findings. Defendants variously contend that some findings are incomplete, that some are inconsistent with other findings, that some are not supported by the evidence, and that some are conclusions of law outside the scope of the Order of Reference. Defendants have moved the Court to sustain these objections, to strike certain findings of fact from the Report, and to allow the introduction of additional evidence with respect to related matters which arose subsequent to the conclusion of the Master's hearing. Plaintiff opposes all three requests and has moved the Court to adopt the Report and all of its findings of fact, as modified by the Stipulation. After a hearing and review of the documents submitted, I rule as follows:

 The standard for a District Court's adjudication on the basis of a Master's Report is set forth in Fed.R.Civ.P. 53(e)(2):

> In an action to be tried without a jury the court shall accept the master's findings of fact unless clearly erroneous. . .
> The court after hearing may adopt the report or may modify it or may reject it in whole or in part or may receive further evidence or may recommit it with instructions.

The "clearly erroneous" directive mandates that this Court should defer to the judgment of the master on factual matters. Where a finding of fact turns on credibility, and the master had the opportunity to observe the demeanor of the witnesses, her findings thus based on oral, disputed testimony must be treated with "high regard" and accorded "great weight." J. Moore & J. Lucas, 5A *Moore's Federal Practice* ¶ 53.-12[1], at 3002, ¶ 53.12[4], at 3012 (2d ed. 1977). On the other hand, when the findings are based on documentary evidence, stipulated facts, or other nondemeanor testimony, the secondary inferences and conclusions of the Master from these sources are not entitled to controlling weight and are subject to greater scrutiny because this Court is equally capable of making such deductions. *E. g., Costello v. Fazio,* 256 F.2d 903 (9th Cir. 1958); *Carter Oil Co. v. McQuigg,* 112 F.2d 275, 279–80 (7th Cir. 1940); *Moore's Federal Practice, supra,* ¶ 53.12[4], at 3012–13. This latter, more rigorous standard of review also applies to conclusions of law or conclusions of mixed fact and law captioned as pure findings of fact. *Moore's Federal Practice, supra,* ¶ 53.12[4], at 3014, ¶ 53.12[5], at 3021. Thus, while the findings of the Master arrive before this Court with a strong presumption of validity, the parties are entitled to a genuine review determining whether the findings are clearly erroneous. 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2614, at 810 (1971).

## II

One set of objections to the Master's Report protests that certain findings of fact are really conclusions of law and should be struck as outside the scope of the reference. Defendants include in this category the following issues: (1) whether or not an item was an asset; (2) whether certain notes or other receivables were secured and/or collectible; (3) whether certain assets, such as stock interests, purchase options, or architectural plans, or certain debt collateral had value at various times; (4) whether IFI's liabilities exceeded its assets on particular dates; (5) whether property remaining in IFI's hands after certain transactions on particular dates was unreasonably small capital for continuing to engage in its business; (6) whether there was reasonable cause to believe, or actual belief, that IFI was insolvent on particular dates; (7) whether the fair salable value of IFI's assets on particular dates was enough to pay its probable liability on its existing debts as they became absolute and matured; (8) what comprised the bargained-for consideration in certain transactions; (9) whether the assignment of certain mortgages to de-

fendants decreased their fair market value; (10) the existence or nonexistence of various generally accepted accounting principles on particular dates; (11) whether characterization of a transaction for tax purposes should always apply for accounting and financial statement purposes; (12) the interpretation of certain agreements; (13) whether certain conveyances were made for a fair consideration.

The determination as to whether an issue is one of fact or of law can present knotty questions to a reviewing court. *See Baumgartner v. United States,* 322 U.S. 665, 670–71, 64 S.Ct. 1240, 88 L.Ed. 1525 (1944); *Bromion, Inc. v. United States,* 411 F.2d 1020, 1023, 188 Ct.Cl. 31 (1969). Although neither party has offered any case authority for the dispositive classification of any of the findings as factual or legal, my review of representative decisions under Mass.Gen. Laws Ann. ch. 109A (West & Supp. 1977–78) convinces me that the first nine contested findings listed above are either findings of fact or subsidiary findings that necessarily are components of the former. *See, e. g., Widett v. George,* 336 Mass. 746, 751, 148 N.E.2d 172 (1958); *Diamond v. Ganci,* 328 Mass. 315, 317, 319, 103 N.E.2d 716 (1952); *U. S. Fidelity & Guaranty Co. v. English Construction Co.,* 303 Mass. 105, 110–112, 20 N.E.2d 939 (1940); *Commissioner v. Walker,* 299 Mass. 123, 125, 128, 12 N.E.2d 103 (1938); *Chipman v. McClellan,* 159 Mass. 363, 367, 34 N.E.2d 379 (1893), *aff'd,* 164 U.S. 347, 17 S.Ct. 85, 41 L.Ed. 461 (1896). Moreover, defendants specifically requested the Master to make obverse findings of facts on at least seven of these nine issues.

While the issue of fairness of consideration has been expressly held to be a mixed issue of law and fact, *American Fidelity Co. v. Harney,* 351 Mass. 163, 169, 217 N.E.2d 905 (1966), defendants unsuccessfully sought at least seven factual determinations from the Master regarding the fairness of consideration for particular convey-

ances. As a matter of estoppel, defendants cannot be heard to treat an issue before the Master as one solely of fact and then, having lost below, object to the entered finding as a conclusion of law. *See generally De-Sisto's Case,* 351 Mass. 348, 351–52, 220 N.E.2d 923 (1966). On the record before her, it was not clearly erroneous for the Master to conclude that the consideration in question was unfair: the IFI stock and the stock of the Esperanza Companies were received at a time when these corporations were found to have been insolvent and the stock, consequently, worthless; and, even assuming that IFI acted as more than a conduit, the 12 per cent interest in Medical Services Corporation of America was valued at no more than $20,000.[1] Issues numbered 10 through 12, in my judgment, are also mixed questions of law and fact. But, after exercising appropriately heightened scrutiny, I am not persuaded that these findings are clearly erroneous, since the Master's construction of the agreements is supported by their plain meaning and there was sufficient expert testimony to support her conclusions on accounting practices.

A second category of objections would have this Court determine the value of assets, the collectibility of notes receivable, and the existence of liabilities, primarily on the basis of transactions (such as pledges, payments, and substitution of notes) subsequent to the dates on which IFI's net worth was material. But carried to its logical extreme, this open-ended approach to valuation would impede any final assessment of solvency, particularly when the financial picture is clouded, as it is here, with rollover debt of questionable collectibility. It is also apparent that the Master viewed some of these subsequent events as sham transactions and accorded them no weight for that reason. Conversely, it cannot be said to be clear error for the Master to give some, but not controlling, probative value to the ultimate adjudication of a debtor as a bank-

1. Since the present motions are focused upon the correctness of the Master's findings, the Court defers to another day any ruling on defendants' further arguments that fair consideration was present in the form of both an ante-

cedent debt by IFI to indemnify Goodman for his endorsement and in the release of and substitution for the original notes and mortgages serving as collateral for the indemnity agreement.

rupt, as bearing on the issue of the collectibility of his note at a point prior in time, or the ultimate realization on an insurance claim, as a measure of its prior asset value being less than its face value.

A third group of objections charge that some findings are inconsistent with others. But a close examination of these contentions reveals that an inconsistency exists only if this Court should decide that an earlier-numbered or subsidiary finding is clearly erroneous. Since in every instance of this kind I am rejecting the substantive objection to the earlier finding, the later objection based on inconsistency becomes moot.

■ Another group of objections claim that certain findings are incomplete. In many of these instances, however, defendants failed to request that the Master make the desired finding. In litigation of this complexity, a Master is not required to make unnecessarily detailed findings *sua sponte*. For example, in Finding No. 230, she could properly limit her role to setting forth the essential thrust of a transaction without an explication of the purpose and various provisions of the underlying agreement. Likewise, it is not clear error to omit a finding that no payment on the principal of a note was due, while finding that payments made during certain time frames represented interest not principal. Moreover, some of the alleged omissions were either included in other parts of the Report, or are irrelevant or unsupported by the evidence.

Other findings, such as the knowledge of defendants' counsel concerning the financial condition of IFI and the Esperanza Companies, and the reasonableness of efforts to obtain complete, current, and accurate financial statements and records from IFI, are based on the not clearly erroneous judgment of the Master concerning the credibility of conflicting witnesses' testimony.

In addition, a finding of a reduction in net worth is a reasonable inference from defendants' admission that the assignments of certain mortgages reduced their fair market value.

However, while I am not yet ready to label them clear error, a few findings have raised questions that have not been dispelled either by my reading of the Master's language and the exhibits or by plaintiff's strenuous rebuttal. This Court believes that the magnitude of the potential exposure to liability here necessitates a limited recommittal to the Master for a clarification and expansion of her Report with recommended findings on the following material issues, *see, e. g., Fulton National Bank v. Tate*, 363 F.2d 562, 566 & n. 2 (5th Cir. 1966); *Moore's Federal Practice, supra*, ¶ 53.13[2], at 3032–33:

1. Were the services described in the May 6, 1969 agreement rendered prior to December 31, 1968, and, if so, were IFI's rights to compensation for such services assets worth $246,346.55 to IFI as of December 31, 1968, January 17, 1969, and January 31, 1969? If they were assets, was IFI still insolvent on these dates? (See Finding of Fact No. 230; Defendants' Objection No. 45).

2. In addition to the $117,000 tax refund and the $12,485 in interest, would the tax provision for taxes for the year ended June 30, 1969 be reversed and added to income and net worth as a result of the write-off of the Esperanza Worcester bad debt? If so, would IFI's liabilities still exceed its assets on June 30, 1969? (See Finding of Fact Nos. 258, 276; Defendants' Objection No. 54).

3. Although there were no formally-promulgated generally accepted accounting principles relating to interim financial statements until December, 1973, does a fair treatment of IFI's results for the interim periods at issue in this litigation require the use of the accrual method of accounting when IFI used that accrual method only for year-end financial statements? (See Finding of Fact Nos. 259–262; Defendants' Objection No. 50). If so, does such an accrual of income and expenses and assets and liabilities render IFI insolvent on all relevant balance sheet dates? (See Finding of Fact Nos.

273–278, 288–296; Defendants' Objection No. 53).

█ In summary, with the exception of the few recommitted issues, I rule that the challenged findings are not clearly erroneous, because the Court, on the entire evidence, is not left with the definite and firm conviction that any mistakes were committed by the Master in her interpretations of the series of transactions engaged in by IFI and the financial condition of the various corporations. *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948).

Accordingly, plaintiff's motion for the adoption of the Master's Report, as corrected by the Stipulation, and as limited by the recommitted findings, should be allowed, and defendants' motions to sustain their objections and strike certain findings should be denied.

### III

Defendants also have moved the Court to receive additional evidence with respect to matters arising subsequent to the conclusion of the Master's hearings on January 12, 1977, and to permit amendment of their answer by the addition of a counterclaim in three counts.

█ In support of their first motion, defendants contend that evidence relating to the results of the successful state court litigation by the holders of the IFI notes should be introduced to show that defendant trustees have been conclusively adjudged liable on the Goodman guarantees and endorsements. In particular, defendants would seek to establish that the judgments have been denied appellate review by the Supreme Judicial Court and have been revised after rescript to now total $654,241.58, rather than the $545,000 found by the Master. In addition, defendants wish to show that partial payments totaling $225,000.19 have been ordered and disbursed. Although it is true that none of this evidence was available to present to the Master, she was aware of the original judgments in Suffolk Superior Court and their affirmance by the Massachusetts Appeals Court. *See Cantor v. Newton*, 1976 Mass. App.Adv.Sh. 1214, 358 N.E.2d 247 (1976). The subsequent procedural developments alluded to by defendants' motion are neither complex nor subject to genuine dispute, and would ordinarily be proper matter for a joint stipulation which this Court stands willing to receive. A *pro forma* reference to a Master would be denied if recommittal was unnecessary on other issues. *See generally B. F. Sturtevant Co. v. Massachusetts Hair & Felt Co.*, 122 F.2d 900, 915 (1st Cir. 1941), *cert. denied*, 315 U.S. 823, 62 S.Ct. 917, 86 L.Ed. 1219 (1942). But since the Master must hold a further hearing on the recommitted questions, the motion to introduce this limited, additional evidence should be granted.

█ As to its second motion, Counts I and II of the proposed counterclaim raise recently-matured claims of indemnity and set-off now that defendants' previously contingent liability to various creditors on IFI notes has been reduced to final judgment, appeals have been exhausted, and a partial pro rata distribution has occurred. *Cf. Scherza v. Home Indemnity Co.*, 257 F.Supp. 97, 98–99 (D.R.I.1965). Defendants contend that the new issues raised are primarily ones of law, that the only evidence required would be limited and documentary, that no additional parties are required for adjudication, and that plaintiff would not be prejudiced by the resolution of these claims in the present lawsuit. Fed.R.Civ.P. 13(e) expressly allows a party to present a counterclaim, with the permission of the Court, when the claim has matured after the party served its original pleading. The policies underlying Rule 13(e) are the avoidance of a multiplicity of litigation and the injustice of barring a late-maturing claim arising out of the same transaction or occurrence. I am satisfied, first, that Counts I and II are late-maturing rather than originally omitted claims, *see* Fed.R.Civ.P. 13(a), (f), and, second, that allowing these additional claims prior to making conclusions of law will neither confuse nor unduly protract this litigation. Therefore, the mo-

tion to present Counts I and II of the proposed counterclaim as amendments to the answer should be allowed.

 Count III comes forward in the posture of an omitted permissive counterclaim. *See* Fed.R.Civ.P. 13(b), (f). It raises claims on subordinated debentures, allegedly given by IFI to defendants in 1967, that while payable in 1972 still remain outstanding. Admittedly, these claims do not arise out of the Agreement that is the subject of plaintiff's instant claim of fraudulent conveyance. A motion to allow defendants to file .proofs of claim with respect to the subordinated debentures was pending in the IFI bankruptcy proceeding at the date of the hearing in the instant case. Since defendants have already acted to prosecute their rights on these claims in the bankruptcy action, they will not be permitted to present a parallel claim here. Moreover, consideration of this distinct claim would not serve a central policy of Rule 13—disposing of the whole controversy in one action—since the independent bankruptcy proceeding will continue to be necessary. Count III also suffers from dissimilar facts and the potential necessity of joinder of other subordinated debenture holders. The different subject matter and obligations represented by these instruments would in all likelihood require, at this late stage, the inconvenience of additional discovery and a recommittal to the Master for further extensive findings of fact. All of these factors, as well as the real danger of prejudice to the plaintiff from the lack of reasonable advance notice of the further issues to be tried, *cf. Jakobsen v. Massachusetts Port Authority*, 520 F.2d 810, 815–16 (1st Cir. 1975), counsel against allowance of Count III as an omitted permissive counterclaim now that the factfinding aspect of this litigation is virtually complete. Defendants' alternative argument—that the claim should be allowed as an amendment under Fed.R.Civ.P. 15(b) to conform the pleadings with the evidence, *i. e.*, Finding No. 96—lacks the necessary predicate because the essence of IFI's obligations to defendants on these instruments was never tried as an issue of fact before the Master by either the express or implied consent of the parties.

For all these reasons, the motion for leave to amend the pleadings with Count III should be denied.

Order accordingly.