52 So.2d 806 (1951)
HOGAN et al.
v.
MARTIN et al.
No. 21830.
Supreme Court of Florida, en Banc.
June 1, 1951.
Robert L. Staufer of King & Staufer, Winter Haven, for petitioners.
B.G. Langston, Lakeland, and Marshall H. Edwards, Bartow, for respondents.
ADAMS, Justice.
We have here a petition for certiorari under Supreme Court Rule 34, 30 F.S.A., to review an interlocutory order striking a portion of petitioner's answer.
Dewitt F. Rollins and his wife were seized of certain real estate as tenants by the entirety. Rollins murdered his wife and then purported to convey the entire property to his attorneys in payment of legal services. The attorneys filed a bill for declaratory decree naming the heirs of his late wife as defendants. The latter answered alleging in substance the taking of the deed by plaintiff's with full knowledge of the murder; that in law and equity Rollins could not assert title to the property because of his foul and felonious deed.
The lower court struck this part of the answer and held that the entire property became vested in Rollins upon the death of his wife.
We will not labor the question at length because we are of the view that our opinion and decision in the case of Ashwood v. Patterson, Fla., 49 So.2d 848, calls for a different conclusion from that reached by the lower court.
The lower court was persuaded to its conclusion by the cases of Bailey v. Smith, 89 Fla. 303, 103 So. 833; Palm Beach Estates v. Croker, 106 Fla. 617, 143 So. 792. This case is differentiated because here Rollins, by his own wrongful act, severed the marital status thereby removing the only foundation upon which to base a tenancy by entirety. We have held that where a husband and wife are divorced and own property by the entireties they become tenants in common. Markland v. Markland, 155 Fla. 629, 21 So.2d 145. See also Sec. 689.15, F.S.A.
*807 The lower court erred in holding that Rollins acquired the whole of the estate held by the entirety, whereas he only acquired a one half interest. The writ is granted and the order in question is quashed with directions to proceed further not inconsistent with this opinion.
So ordered.
SEBRING, C.J., and THOMAS and ROBERTS, JJ., concur.
TERRELL and CHAPMAN, JJ., dissent.
CHAPMAN, Justice (dissenting).
A grand jury of Polk County, Florida, on the 22nd day of June, 1948, presented in open court an indictment against Dewitt F. Rollins charging him with the crime of murder in the first degree for the unlawful killing of his wife, Thelma Wilkinson Rollins, in the County of Polk on the 16th day of May, 1948. Rollins, upon arraignment, entered a plea of not guilty to the indictment. Subsequently he was placed upon trial and a jury of Polk County, after hearing all the testimony and the charges of Court upon the law of the case, returned a verdict of murder in the first degree but with recommendation to mercy. A motion for a new trial was made and denied and the trial Court then adjudged Rollins guilty of the crime of murder in the first degree and sentenced him to the State Prison for the period of his natural life. Rollins appealed and the judgment of conviction entered below was affirmed. See Rollins v. State, Fla., 41 So.2d 885.
It appears by the record that in 1931 T.H. Wilkinson and wife Mattie E. Wilkinson acquired title to and became the owners of the real estate described in the bill of complaint and resided upon it as a homestead for a number of years. The Wilkinsons died, leaving as their sole heirs at law seven children: (1) Gladys Hogan; (2) Jeanne Joines; (3) Roy Hill Wilkinson; (4) Olin A. Wilkinson; (5) Billie Ruth Pratt; (6) Charles Howard Wilkinson; and (7) Thelma Wilkinson Rollins. The heirs supra in 1943 conveyed a six-sevenths interest in and to the property to Dewitt F. Rollins and wife, Thelma Wilkinson Rollins, and by said conveyance Dewitt F. Rollins and wife, Thelma Wilkinson Rollins, became vested in an estate by the entireties as to the six-sevenths interest, but Thelma Wilkinson Rollins at the time of her death in May, 1948, additional thereto owned in her own right a one-seventh interest in the homestead of her deceased parents. The Rollins lived upon the property as a homestead from the time of purchase in 1943 until the death of Thelma Wilkinson Rollins in 1948.
On June 11, 1949, Dewitt F. Rollins, unmarried, by warranty deed conveyed to D.M. Martin, E.P. Martin, H.E. Oxford and L.D. Oxford the property described in the bill of complaint for and "in consideration of services rendered in the amount of $5,000.00." This deed was duly recorded among the public records of Polk County, Florida, on the 21st day of June, 1949. On October 18, 1949, D.M. Martin, E.P. Martin, H.E. Oxford and L.D. Oxford filed in the Circuit Court of Polk County, Florida, their bill of complaint under the provisions of Chapter 87, F.S.A., against the heirs at law of Thelma Wilkinson Rollins above named, and the legal representatives of the estate of Thelma Wilkinson Rollins. The bill of complaint recited that Dewitt F. Rollins and wife, Thelma Wilkinson Rollins, owned the described property as an estate by the entireties and that Thelma Wilkinson Rollins, on May 18, 1948, departed this life leaving as a sole owner of the described property Dewitt F. Rollins. It alleged that the heirs of Thelma Wilkinson Rollins asserted and claimed the ownership of the property but the exact nature of the claim was unknown. The bill of complaint prayed that the plaintiffs be decreed and declared the sole and only owners of the property.
An answer to the bill of complaint comprising some nine paragraphs was filed by the six brothers and sisters of the deceased Thelma Wilkinson Rollins. Paragraph nine of the answer prays that the Court take jurisdiction of the matter and adjudicate the rights of the parties according to the facts based upon equitable principles. It asked that a decree be entered to the *808 effect that the brothers and sisters of Thelma Wilkinson Rollins be decreed the owners of the property described in the bill of complaint  that the murderer of Thelma Wilkinson Rollins be not permitted in a court of equity to profit by his own wrongful act.
Paragraph six of the answer sets out that D.M. Martin, E.P. Martin, H.E. Oxford and L.D. Oxford are attorneys at law and represented Dewitt F. Rollins in and about his defense wherein the State of Florida charged him with the murder of his wife, Thelma Wilkinson Rollins. The attorneys represented Rollins in the Circuit Court of Polk County, Florida, where he was convicted of murder in the first degree and thereafter on appeal to the Supreme Court of Florida. The attorneys well knew at the time of acceptance of the deed (a copy of which is attached to the bill of complaint) of the murder charge then pending against Rollins and had such information when the deed in question was delivered and recorded among the public records of Polk County, Florida, as well as immediately after the death of Thelma Wilkinson Rollins, which occurred on May 16, 1948.
Paragraph seven of the answer sets out that Dewitt F. Rollins by reason of his murdering his wife has attempted to enrich himself and thereby come into possession and control of the described real estate, while in equity and in good conscience he should not be permitted to profit by his said crime  that the brothers and sisters of Thelma Wilkinson Rollins (no children having been born to the union of Rollins and Thelma Wilkinson Rollins) are entitled to the entry of a final decree adjudicating them to be the owners of the fee simple title to the six-sevenths interest of the described land in which Dewitt F. Rollins and Thelma Wilkinson Rollins were tenants by the entireties,  that the estate by the entireties in and to said real estate was legally severed and forever destroyed by the iniquitous and criminal act of Rollins in the murder of his wife. He should not be permitted to profit by his criminal act. The Chancellor below entered an order striking the entire answer of the defendants except paragraph nine, on the theory that it did not state a legal defense to the bill of complaint. On petition for interlocutory certiorari we are requested to review the order striking the answer, except the one-seventh interest of the realty inherited by Thelma Wilkinson Rollins through her mother. The order challenged here holds that the plaintiffs are the owners of a six-seventh interest in the described property.
The controlling questions presented are: husband and wife hold real estate situated in Florida by the entireties. The husband murdered his wife and for the crime he was indicted, tried and convicted. The husband employed counsel who represented him in each step of the litigation incident to the murder of his wife. The husband later conveyed the real estate, formerly held by him and his wife by the entireties, to his attorneys in consideration of professional services rendered in connection with the murder of his wife: (1) Is the title so conveyed better or superior to the claim of the heirs of the murdered wife? (2) Will a court of equity permit or allow a murderer to profit by his own crime?
Estates by the entirety became a part of our jurisprudence upon our adoption of the common law,  where land is conveyed to both husband and wife an estate by the entirety was created by the common law and upon the death of one spouse the entire estate went to the other. The common law has been expressly held by statute to be in force in Florida except where it has been modified by competent governmental authority, and, as there has been no such modification of this principle, an estate by the entirety exists in Florida. English v. English, 66 Fla. 427, 63 So. 822. We have no trouble in accepting the version of counsel as to the essentials or characteristics of an estate by the entireties as enunciated in Ohio Butterine Co. v. Hargrave, 79 Fla. 458, 84 So. 376, also in Bailey v. Smith, 89 Fla. 303, 103 So. 833; Palm Beach Estates v. Croker, 106 Fla. 617 143 So. 792; Strauss v. Strauss, 148 Fla. 23, 3 So.2d 727, and similar cases.
The common law under which estates by the entireties were created likewise presented *809 certain equitable rules and common law principles now in force in the State of Florida. One is to the effect that no one shall be permitted to profit by his own fraud or wrong or found any claim on his own iniquity or acquire property by his own crime. The murderer will not be heard to say in a court of equity that title and ownership of property vests in him as a result of his criminal act. This rule is applicable whether the claimant be a thief or murderer. The idea of permitting a thief or a murderer to enjoy the fruits of his own crime is not only abhorrent to our courts but is calculated to excite the just indignation of right thinking people. It is but of little consequence that the crime was committed for the purpose of gain or some other felonious design. The law places on these criminal acts its unqualified disapproval and condemnation.
An examination of the adjudications from other jurisdictions discloses a conflict on the point at issue but the majority trend, even in the absence of a controlling statute, is to the effect that a thief or murderer in courts of justice should not be permitted to claim as his own the fruits of his crime. Some of these courts having statutes similar to Section 731.31, F.S.A., hold that estates by the entirety are not included therein. Section 731.31, supra, provides: "Any person convicted of the murder of a decedent shall not be entitled to inherit from the decedent or to take any portion of his estate as a legatee or devisee. The portion of the decedent's estate to which such murderer would otherwise be entitled shall pass to the persons entitled thereto as though such murderer had died during the lifetime of the decedent."
It is not necessary to decide in this cause whether estates by the entireties are included or excluded from the terms, provisions and meaning of the Act, but it is safe to conclude that Section 731.31, F.S.A., in a large measure is declaratory of the public policy of the State of Florida on the point in controversy. This public policy is consistent with the common law rule and equitable principle that no man should be permitted to profit by his own criminal acts. See: New York Mutual Life Ins. Co. v. Armstrong, 117 U.S. 591, 6 S.Ct. 877, 29 L.Ed. 997; Bryant v. Bryant, 193 N.C. 372, 137 S.E. 188, 51 A.L.R. 1100; DeZotell v. Mutual Life Ins. Co., 60 S.D. 532, 245 N.W. 58; Garwols v. Bankers Trust Co., 251 Mich. 420, 232 N.W. 239; Price v. Hitaffer, 164 Md. 505, 165 A. 470; Estate of Tyler, 140 Wash. 679, 250 P. 456, 51 A.L.R. 1088; Sherman v. Weber, 113 N.J. Eq. 451, 167 A. 517.
The acquisition of property by murder is treated by Pomeroy's Equity Jurisprudence, Vol. 4 (5th Ed.), par. 1054d, thusly:
"Acquisition of Property by Murder.  A review of the cases involving the legal effect of felonious homicide upon the title claimed by the slayer to the property of the deceased discloses three lines of holdings, sometimes dependent upon express statutory provisions: (1) the legal title does not pass to the murderer as heir or devisee; (2) the legal title passes to the murderer and may be retained by him in spite of his crime; (3) the legal title passes to the murderer, but equity will treat him as a constructive trustee of the title because of the unconscionable mode of its acquisition and compel him to convey it to the heirs of the deceased, exclusive of the murderer.
"Although this equitable principle, it seems, has been frequently overlooked, its applicability is obvious; equity will not permit the wrongdoer to retain for his own benefit a title which he has acquired through his own wrong. This is the rule recognized by the American Law Institute.
"(Where one joint tenant, or tenant by the entirety, murders another, the interest of the murderer cannot be taken away from him, in the absence of a statute so providing. However, it has been held that a court of equity will compel the survivor to hold his interest as constructive trustee for the heirs of his murdered cotenant. As stated by the American Law Institute,
"`Where two persons have an interest in property and the interest of one of them is enlarged by his murder of the other, to the extent to which it is enlarged he holds *810 it upon a constructive trust for the estate of the other.'"
Pomeroy, supra, cites authorities from the several jurisdictions to sustain each of the three rules.
In my opinion the petition for certiorari should be granted and the order striking the answer of the petitioners is quashed.
TERRELL, J., concurs.