JOHN DIAMOND *vs.* JASPER GANCI & another.

Bristol. October 22, 1951. — January 23, 1952.

Present: QUA, C.J., LUMMUS, WILKINS, WILLIAMS, & COUNIHAN, JJ.

*Tenants by the Entirety. Public Policy. Husband and Wife,* Funeral expenses. *Contract,* Implied. *Homicide. Fraudulent Conveyance.*

A husband in the circumstances could be found liable for the funeral expenses of his wife on a contract implied in law.

The public policy against a murderer's profiting by his own wrong did not operate to deprive one who murdered his wife of the life interest with the exclusive right to rents and profits which he already had at the time of the murder in real estate held by him and his wife as tenants by the entirety, or of an equivalent interest in surplus proceeds of a foreclosure of a mortgage on the real estate occurring after the murder.

A mortician having a claim for the funeral expenses of a wife murdered by her husband was entitled in equity and by public policy to reach in

satisfaction of his claim the principal, and not merely the husband's life interest, in surplus proceeds of a foreclosure of a mortgage on real estate which had been held by the husband and his wife as tenants by the entirety at the time of the murder.

A conclusion that one who transferred property in trust for the benefit of his children did not receive fair consideration for the transfer so far as his creditors were concerned was justified notwithstanding that previous to the transfer, in a divorce proceeding brought against him by his wife, who died meanwhile, he had been ordered to contribute to the support of the children.

A transfer in trust of the transferor's only asset, made without his receiving fair consideration therefor and at a time when he was indebted to a creditor, was a fraudulent conveyance as against the creditor.

BILL IN EQUITY, filed in the Superior Court on June 17, 1949.

The suit was heard by *Smith*, J., on a master's report.

*C. Sallet*, for the defendant Bishop.

*W. A. McGivney*, for the plaintiff.

WILKINS, J. The defendant Ganci is serving a life sentence following conviction for the second degree murder of his wife, Marjorie. The plaintiff, a mortician, brings this bill in equity to establish against the defendant Ganci (hereinafter called the defendant) a debt for the wife's burial expenses and to reach and apply a trust fund created by the defendant of which the defendant Bishop is trustee. The case was referred to a master. The defendant trustee appeals from an interlocutory decree overruling the exceptions to and confirming the master's report, and from a final decree establishing the indebtedness in the amount of $395, and ordering the defendant trustee to pay this sum with costs. The bill was taken pro confesso against the defendant.

. At the time of her death on July 6, 1948, Marjorie and the defendant held as tenants by the entirety certain real estate in North Attleborough, upon which there were two mortgages. These were foreclosed, and after the payment of the mortgage notes and expenses, the balance was $3,042.85. In March, 1948, Marjorie had been granted a decree nisi of divorce against the defendant, the custody of three minor children had been awarded to her, and the de-

fendant had been ordered to contribute to their support. As a result of a dispute with persons representing the children and the wife's estate the defendant, later in 1948, signed an instrument purporting to be a trust designating the defendant Bishop as trustee for the benefit of the children of the funds left from the foreclosure. The defendant had no other assets. The mortgagee paid the $3,042.85 to the defendant trustee. The plaintiff, as undertaker and funeral director, provided for the burial, and $395 is a fair charge for his services. As an inference from the foregoing, the master found that at the time of execution of the trust instrument the defendant was insolvent and was indebted to the plaintiff in the amount of $395. He also found that the defendant did not receive fair consideration for the money transferred in trust.

It is alleged in the bill that before the wife's death her interest in the realty was her only asset. This is neither admitted nor denied in the answer, and there was no finding on this point. No contention is now made, however, that there was any other asset, and we treat the case on the footing that there was none. The defendant, accordingly, could be found liable for his wife's funeral expenses on a contract implied in law. *Green* v. *Horton,* 326 Mass. 503, 505. It is also clear that upon foreclosure the surplus stood in place of the equity of redemption. *Spaulding* v. *Quincy Trust Co.* 313 Mass. 752, 753.

A more difficult question is whether the defendant has an interest in the trust property which may be reached in this proceeding. The answer depends upon the effect to be given the rule of public policy which prevents a murderer from profiting by his own wrong. *Slocum* v. *Metropolitan Life Ins. Co.* 245 Mass. 565, 567. Restatement: Restitution, § 188, comment b. See Ames, Lectures on Legal History, 310; Scott on Trusts, § 492; and cases collected in notes in 51 A. L. R. 1096, 1106, 1113; 71 A. L. R. 288; 139 A. L. R. 501; 156 A. L. R. 623. See also *DeMello* v. *John Hancock Mutual Life Ins. Co.* 281 Mass. 190, 197–198; *Rousseau* v. *Metropolitan Life Ins. Co.* 299 Mass. 91, 92;

*Millen* v. *John Hancock Mutual Life Ins. Co.* 300 Mass. 83, 85; *Lubianez* v. *Metropolitan Life Ins. Co.* 323 Mass. 16, 19–20.

The general principles underlying tenancy by the entirety are fully stated in our decisions. "The tenancy by the entirety is essentially a joint tenancy modified by the common law theory of the unity of husband and wife." *Bernatavicius* v. *Bernatavicius*, 259 Mass. 486, 487. "[S]uch a tenancy confers upon the husband rights paramount to those of his spouse under which during his life and the continuance of the marital relationship he is entitled to possession and control of the granted premises, together with the use and the profits therefrom." *Franz* v. *Franz*, 308 Mass. 262, 265. "The one who survives and thereby becomes the sole owner of the whole takes no new title by the survivorship." *Licker* v. *Gluskin*, 265 Mass. 403, 405. The survivor holds under the deed creating the tenancy by virtue of which he was originally seized of the whole. *Palmer* v. *Treasurer & Receiver General*, 222 Mass. 263, 265.

From these principles, it is obvious that the defendant held the legal title to the foreclosure proceeds, which he could, and did, assign by the trust instrument. Before the wife's death the defendant had enjoyed a life interest with the exclusive right to rents and profits. This he did not forfeit by the murder. Accordingly, the least beneficial interest which the trust instrument could have transferred is the defendant's life interest, of which he would not have been deprived by the principle under consideration. *Bryant* v. *Bryant*, 193 N. C. 372.[1] Scott on Trusts, § 493.2. 49 Harv. L. Rev. 715.

---

[1] Other cases elsewhere have reached various results. In *Beddingfield* v. *Estill & Newman*, 118 Tenn. 39, the husband was allowed to keep the whole estate. On the other hand, in *Van Alstyne* v. *Tuffy*, 103 Misc. (N. Y.) 455, the wife's heirs were held entitled to compel the husband's heirs to transfer the whole property. Occupying middle ground are *Barnett* v. *Couey*, 224 Mo. App. 913, where the husband's estate was held as constructive trustee of one half for the estate of the wife; and *Sherman* v. *Weber*, 113 N. J. Eq. 451, where the devisees under the wife's will were held entitled to the commuted value, as of the date of the death of the wife (who was older than her husband), of the net income of one half of the property for the period of her expectancy to be ascertained by the mortality tables.

The trial judge's ruling, however, was not limited to payments out of a life interest. Payment out of the principal of the trust was ordered. To uphold the decree, therefore, we must decide that the public policy against a murderer profiting by his own wrong does not extend to bar a creditor of his and of his wife's estate, in this case his wife's undertaker, whose claim for this necessary service would be preferred against her estate if it contained assets. G. L. (Ter. Ed.) c. 198, § 1. Had not the defendant made the transfer in trust, it would seem that, except for his life interest, he could have been adjudged a trustee of the remainder for the benefit of his wife's estate. In equity, it seems fair, as well as favored in public policy, that the plaintiff, who in other circumstances might have enforced his claim against the wife's estate, and who acquired his claim as a result of the same act of murder, should be allowed to reach the principal of the trust and not be remitted to collecting his debt out of income and probably in instalments with the attendant delay and uncertainty. We so hold.

Various contentions of the defendant trustee based upon the support order are without present significance. The order created no debt which is enforceable in any jurisdiction until the court which made it has adjudicated in appropriate proceedings what, if anything, is due under it. G. L. (Ter. Ed.) c. 208, § 37. *Lyon* v. *Lyon*, 318 Mass. 646, 649. See *Watts* v. *Watts*, 314 Mass. 129, 133. No such order was made here so far as appears. Apart from questions arising from the termination of the order of custody by the wife's death (*Stone* v. *Duffy*, 219 Mass. 178, 182; *Barry* v. *Sparks*, 306 Mass. 80, 83–84), the transfer to the defendant trustee could not have been a compliance with the order. See *Wilson* v. *Caswell*, 272 Mass. 297. There was no error in the conclusion that the defendant did not receive fair consideration for the assignment.

The findings are sufficient to show a fraudulent conveyance as against creditors of the defendant. *Toy* v. *Green*, 319 Mass. 354, 360–361. *Mullins* v. *Riopel*, 322 Mass. 256, 260–261. The mortgagee's payment to the trustee was made

in accordance with the trust and because of the trust. This is the reasonable interpretation of the master's report. For present purposes, that payment is in substance the same as one by the defendant to the defendant trustee direct. The plaintiff is entitled to have the payment set aside to the extent necessary to pay his debt. G. L. (Ter. Ed.) c. 109A, § 9; c. 214, § 3 (9). *Moseley* v. *Briggs Realty Co.* 320 Mass. 278, 285.

We are of opinion that there was no error in the decree reaching and applying the principal of the trust fund in satisfaction of the plaintiff's debt.

*Interlocutory decree affirmed.*

*Final decree affirmed with costs of appeal.*