### Frank H. Stone v. John R. Blake et ux

[110 A2d 702]

October Term, 1954.

Present: **Sherburne, C. J., Jeffords, Cleary, Adams and Chase, JJ.**

Opinion Filed January 4, 1955.

*Osmer C. Fitts* for the defendant.

*Barber & Barber* for the plaintiff.

**Chase, J.**  Anne A. Anderson owned certain real estate in the town of Whitingham which she conveyed to the defendants, Mr. and Mrs. Blake, by a warranty deed dated September 23, 1950.  Previously, on October 21, 1948, Anderson had sold to Chester H. Willey all the standing timber on said real estate except certain evergreen trees on the east side of the house and certain trees around a spring and was paid the full purchase price.  This sale was evidenced by a writing signed by Anderson and Willey.  This writing was recorded in Whitingham but had only one witness and was not sealed or acknowledged.  It gave Willey five years from its date in which to cut and remove the timber.  About June 14, 1949 Willey transferred to the plaintiff, Frank H. Stone, his right to cut and remove a portion of the timber by a writing that he signed.  This writing had only one witness and was not sealed, acknowledged nor recorded.  The Blakes knew, when they took their deed, about the contract for the sale of the timber to Willey and their deed excepted such rights as Willey may have to cut and remove timber.  On October 4, 1951

Stone conveyed his rights to cut and remove timber to West Virginia Pulp & Paper Co. On June 9, 1952, the Paper Co. conveyed the rights back to Stone. In the latter part of January or early February 1951 the Blakes learned for the first time that Stone claimed to have acquired the cutting rights of Willey. On May 29, 1952, an attorney for the Blakes threatened Stone with dire consequences if he should try to cut and remove any timber. No timber was cut or removed from June 14, 1949, to October 1, 1953. On October 2, 1953, Stone had his bill of complaint served on the Blakes. By this bill Stone sought a declaration of his rights to cut and remove timber from the Blake property. The Blakes filed an answer and cross bill. A hearing was had, findings made and a decree entered which declared Stone to be the owner in equity of the standing timber on the Blake property except those trees reserved by Willey and those trees reserved by Mrs. Anderson and allowed Stone a year from the date the decree became final to cut and remove said trees, enjoined the Blakes during this period of one year and dismissed their cross bill. The Blakes excepted to this decree and the case is here on their bill of exceptions.

■ The only exception taken by the defendants was to the decree and this raises the one question as to whether the decree is warranted by the pleadings and supported by the findings. *McPherson* v. *Dow*, 117 Vt 506, 507, 96 A2d 649.

The defendants do not claim that the decree is not warranted by the pleadings but argue that it is unsupported by the findings because Willey acquired nothing more in law by his contract with Mrs. Anderson, which was dated October 21, 1948, than a parole license to enter, cut and remove standing trees on Mrs. Andersen's land during the time specified; that this parole license was not assignable or transferable by Willey; that the plaintiff derived no legal or equitable interest or right to the standing timber by virtue of the assignment to him by Willey; and that the plaintiff has no standing in equity to demand specific performance of the Anderson-Willey contract against the defendants.

■■ It is quite apparent that the writing of October 21, 1948, was wholly insufficient to convey the title to the standing

timber. As claimed by the defendants, it operated only as a license to enter to cut and remove the timber. The title to the timber passed to Willey or his assignee only as fast as it was cut. Such is the result at law. But in equity, the parties stand in an entirely different situation. Equity regards that as done which ought to be done. It is said that this is equity's favorite maxim. Under this maxim, equity will deal generously in the correction of mistakes. In relation to conveyances of real estate or attempts to that end, it makes no difference to a court of equity whether the mistake or omission is in regard to a statutory or common law requisite; it makes no difference whether the parties failed to execute such an instrument as they intended, or mistook the operative effect of the one they did execute. The court of chancery will carry into effect their intention. *Dutton* v. *Davis*, 103 Vt 450, 451, 452, 453, 156 A 531, and cases cited.

It is apparent in this case that Mrs. Anderson was paid for and intended to convey the title to the standing timber on her property with certain exceptions to Willey, such title to be defeated only by his failure to cut and remove the timber within five years. It is equally apparent that Willey was paid for and intended to convey to Stone the standing timber he had bought with certain exceptions and subject to the same time limitation to cut and remove.

The rule heretofore stated applies not only to the original parties, but every subsequent purchaser who has notice is subject to it. *Dutton* v. *Davis*, *supra*, at page 452, and cases cited. The Blakes are subject to this rule for they had notice of the existence of the right to cut and remove timber from the Anderson property before they contracted to buy it and their deed excepted this right and stated the date of its termination. They are not purchasers without notice as they have claimed. The writing of October 21, 1948, is not just a mere license as the defendants claim, but is, in equity, a conveyance of the standing timber. The writing of June 14, 1949, is, in equity, a conveyance of the standing timber described therein. In equity, both Willey and the plaintiff acquired property which they could dispose of as they chose.

The defendants claim in their brief that the plaintiff is barred by his own laches from asserting any equitable claim against the defendants. Their argument in support of this claim is that the plaintiff delayed an unreasonable period of time in asserting his rights.

■ ■ Laches involves prejudice, actual or implied, resulting from delay. It does not arise from delay alone, but from delay that works disadvantage to another. The omission to assert a right for an unreasonable and unexplained lapse of time, when the delay has been prejudicial to the adverse party, rendering it inequitable to enforce the right, will always bar relief in equity. *Comings* v. *Powell*, 97 Vt 286, 293, 294, 122 A 591, and cases cited. Laches is an affirmative defense and the burden of proof is on the party relying on it. *Comings* v. *Powell, supra*, at 293; *Bufton* v. *Crane*, 101 Vt 276, 281, 143 A 382; *Vermont-Peoples Nat. Bank* v. *Robbins Est.*, 105 Vt 283, 290, 166 A 6. In the case before us the defendants do not call to our attention nor do we find any finding that any delay on the part of the plaintiff was either unreasonable or prejudicial to the defendants. In fact, it would be a reasonable inference that any delay by the plaintiff after May 29, 1952, was due to the letter which defendants' attorney sent the plaintiff. The doctrine of laches does not apply in this case.

*Decree affirmed.*