**Evelyn Preston and Edward Chabot, III v.
Shirley Chabot and Edwin W. Free, Jr.**

[412 A.2d 930]

No. 303-78

Present: Barney, C.J., Daley, Larrow, Billings and Hill, JJ.

Opinion Filed February 7, 1980

*James C. Gallagher* of *Downs, Rachlin & Martin,* St. Johnsbury, for Plaintiffs.

*Edwin W. Free, Jr.,* of *Richard E. Davis Associates, Inc.,* Barre, for Defendants.

**Larrow, J.** This is an appeal from a declaratory judgment order entered in Caledonia Superior Court which, in order to prevent Edward Chabot, Jr., from profiting by his crime, imposed a constructive trust upon defendants, Shirley Chabot and Edwin W. Free, Jr., of an undivided one-half interest in certain real property for the benefit of plaintiffs, children of Edward Chabot, Jr.'s first marriage.

Edward Chabot, Jr., and Norma Chabot were married on January 22, 1938, and subsequently, by virtue of two deeds, took title as tenants by the entirety to certain real estate located in Hardwick, Vermont. On November 15, 1965, Edward Chabot, Jr., shot his wife and was charged with murder. He pleaded guilty to second degree murder and was sentenced to the state penitentiary. Norma Chabot died intestate and her

probate estate consisted entirely of personal property; no real property was listed in the inventory or final account.

After his release from prison in 1969, Edward Chabot, Jr., married Shirley Chabot and later, by straw deed, purportedly conveyed the Hardwick property to himself and Shirley Chabot as tenants by the entirety. He also on that same day, December 10, 1975, executed a will which left his entire estate, real and personal, to Shirley Chabot with the exception of small cash bequests to each of his children and grandchildren. Edward Chabot, Jr., died on December 29, 1975, survived by Shirley Chabot, children and grandchildren. Plaintiffs, though aware of their father's remarriage, did not learn of the December 10, 1975, deed and will until after his death.

A declaratory judgment action, seeking a constructive trust for the benefit of plaintiffs over the Hardwick property, was commenced on January 10, 1976. By agreement of the parties, an evidentiary hearing was waived, and the case submitted upon an agreed statement of facts and memoranda of law.

Defendants appeal, the trial court having found for plaintiffs, and assign as error the court's findings that: (1) this action was not barred by laches; and (2) in order to prevent Edward Chabot, Jr., from profiting by his crime, a constructive trust be imposed upon defendants of an undivided one-half interest in the subject property.

We deal first with the issue of laches. Laches is an affirmative equitable defense, and the burden is on the party relying on it. *Quazzo* v. *Quazzo*, 136 Vt. 107, 114, 386 A.2d 638, 643 (1978). Laches involves prejudice to the adverse party, actual or implied, resulting from plaintiffs' delay in asserting their rights. *Turner* v. *Turner*, 131 Vt. 253, 257, 305 A.2d 592, 595 (1973). It does not, however, arise from delay alone, but from delay that disadvantages another. *Stone* v. *Blake*, 118 Vt. 424, 428, 110 A.2d 702, 705 (1955). Furthermore, a trial court's determination on the issue of laches is a matter of much discretion which will not be overturned unless clearly shown to be wrong. *Laird Properties New England Land Syndicate* v. *Mad River Corp.*, 131 Vt. 268, 282, 305 A.2d 562, 570 (1973).

Although more than eleven years elapsed between the murder of Norma Chabot and the institution of this action,

there was no showing below that this delay in any way prejudiced the defendants. No evidence whatsoever was introduced as to defendant Edwin Free, Jr., who is a party to this action only by virtue of being executor of Edward Chabot, Jr.'s estate. Nor did evidence below indicate that defendant Shirley Chabot was prejudiced; her only change in status during this period was marrying Edward Chabot, Jr., and, two weeks before his death, receiving a deed purporting to make her a tenant by the entirety in the Hardwick property. Defendants have not shown how they are worse off by the trial court's imposition of a constructive trust now, than had it been imposed immediately after Shirley Chabot's marriage in 1970 to Edward Chabot, Jr. In both instances, Shirley Chabot would receive one-half of her late husband's interest in the subject property; defendants have not demonstrated prejudice.

Defendants' claim that if plaintiffs had taken legal action earlier and prevailed, Edward Chabot, Jr., would have made "other suitable arrangements" for Shirley Chabot is without merit. The evidence below is to the contrary. He willed Shirley Chabot substantially everything he owned, and even if he knew during his lifetime of this lawsuit, he could not have acted differently; there was nothing more to leave her.

In their second claim, defendants contend the trial court erred in holding that plaintiffs, Edward Chabot, III and Evelyn Preston, owned legal title to an undivided one-half interest in the property. We disagree.

There was at the time of Norma Chabot's death in 1965 no Vermont statutory provision governing the descent and distribution of property from a decedent to the slayer of that decedent. But cf. 14 V.S.A. § 551 (6) (statutory provision added in 1972 which caused a person convicted of intentionally and unlawfully killing another person to forfeit his share of that person's estate). This Court had, however, adopted the common law principle that one should not profit from his wrong. *In re Estate of Mahoney*, 126 Vt. 31, 34, 220 A.2d 475, 478 (1966). This principle was not extended to every case where a killer acquired the victim's property as a result of the killing. Instead, the Court reasoned that the slayer should not be permitted to improve his position by the killing, but should not be compelled to lose property that he had a vested interest in had there been no killing. *Id.*

Based on *Mahoney*, defendants argue that Edward Chabot, Jr., received at his wife's death the entire property, forfeiting nothing. They contend Edward Chabot, Jr., did not profit from his killing as he already, as a tenant by the entirety with his slain wife, Norma Chabot, owned the whole property, and should not forfeit this vested right in the whole.

Tenants by the entirety are, as defendants claim, viewed as *each* being vested, under a legal fiction, with title to the whole; there being no moieties. *Town of Corinth* v. *Emery*, 63 Vt. 505, 506–07, 22 A. 618, 618 (1891). Additionally, during their joint lifetimes, neither has a share that can be disposed of without the other joining. *Id.*

While Edward Chabot, Jr., had a vested right in the subject property, defendants' claim that he did not profit from this killing, if he received the entire property, is frivolous. A legal fiction, that each tenant by the entirety owns the whole, cannot obscure the fact that before Norma Chabot's murder, Edward Chabot, Jr., as a tenant by the entirety, had to share the profits of the property and, moreover, his right to sole and complete ownership was contingent upon surviving his wife. Cf. *Bradley* v. *Fox*, 7 Ill. 2d 106, 118, 129 N.E.2d 699, 705 (1955) (joint tenants). Whereas, after, and because of, this murder Edward Chabot, Jr., became the sole owner of the Hardwick property, no longer sharing the profits, nor fearing the loss of his interest. See G. Bogert, Law of Trusts and Trustees § 478 (2d ed. rev. 1978).

As the trial court correctly indicates, it would be unconscionable for Edward Chabot, Jr., after murdering his wife and cotenant by the entirety, to retain the entire interest in the property and then pass title to his second wife as a successor tenant by the entirety. A husband who murders his wife should not be better off propertywise merely because he holds property by the entireties rather than some other way. *Colton* v. *Wade*, 32 Del. Ch. 122, 127, 80 A.2d 923, 925–26 (1951). Therefore, to avoid this unconscionable result, the trial court imposed a constructive trust on one-half of the subject property for benefit of plaintiffs.

The trial court found, and we think correctly, that the most equitable and appropriate method of distribution for resolv-

ing the instant case is one which recognizes that the estate was severed by the unlawful killing, and that the Hardwick property held by Edward, Jr., and Norma Chabot as tenants by entirety vested in Edward, Jr., when he survived Norma, but his estate is required to hold one-half of the property in constructive trust for Norma's heirs, the plaintiffs. See generally Annot., 42 A.L.R.3d 1116, 1141 (1972). The trial court analogized the present situation to a divorce, which under Vermont law destroys the tenancy by the entirety and creates by operation of law a tenancy in common among the parties. *Stewart* v. *Bleau's Estate*, 102 Vt. 273, 276–77, 147 A. 692, 693 (1929). This position has been taken by other jurisdictions to prevent the "unconscionable mode" of acquiring full legal title by the husband's survival of his murdered wife. *Pannone* v. *McLaughlin*, 37 Md. App. 395, 405, 377 A.2d 597, 603 (1977); *Barnett* v. *Couey*, 224 Mo. App. 913, 915, 27 S.W.2d 757, 760 (1930). See also *National City Bank* v. *Bledsoe*, 237 Ind. 130, 144 N.E.2d 710 (1957); *Budwit* v. *Herr*, 339 Mich. 265, 63 N.W.2d 841 (1954).

This result works no forfeiture to defendants as they receive what Edward Chabot, Jr., was entitled to. Nor, however, do defendants profit, as they are prevented from acquiring any additional benefits from the murder of Norma Chabot. Despite the theory of ownership of the whole by tenants by the entirety, which defendants espouse, we think it is incorrect to suggest that the interest of a surviving husband is the same as his interest prior to his wife's death. Death severed the tenancy by the entirety and created a tenancy in common between the parties, the deceased's, Norma Chabot's, share being held in constructive trust for benefit of her heirs, the plaintiffs. See *Pannone* v. *McLaughlin, supra*, 37 Md. App. at 403, 377 A.2d at 602; *Barnett* v. *Couey, supra*, 224 Mo. App. at 915, 27 S.W.2d at 760.

A constructive trust is a tool often used by courts to prevent unjust enrichment. See Annot., *supra*, at 1129. It is a "formula through which the conscience of equity finds expression," *Bradley* v. *Fox, supra*, 7 Ill. 2d at 117, 129 N.E.2d at 705, and is, under these facts, a most appropriate vehicle. See *In re Estate of Mahoney, supra*, 126 Vt. at 36, 220 A.2d at 479; *Miller* v. *Belville*, 98 Vt. 243, 248, 126 A. 590, 593 (1924).

The trial court's imposition of a constructive trust was proper, and the judgment below is affirmed.

*Judgment affirmed.*

**Billings, J.,** dissenting. I cannot agree with the majority's reasoning or disposition of this case. The court below erred in construing the decision of this Court in *In re Estate of Mahoney*, 126 Vt. 31, 220 A.2d 475 (1966), and the law of tenancies by the entirety.

In the case of *Town of Corinth* v. *Emery*, 63 Vt. 505, 506–07, 22 A. 618, 618 (1891), this Court set forth the common law of tenancies by the entirety as follows:

> This estate, created by conveyance to husband and wife, is a peculiar one. The interest of the grantees is not joint, nor in common. The parties do not hold moieties, but take as one person, taking as a corporation would take; they have but one title; each is seized of the whole and each owns the whole. If one dies the estate continues in the survivor, the same as if one of several corporators dies. It does not descend upon the death of either, but the longest liver, being already seized of the entire estate, is the owner of it. One tenant by entirety cannot sever the tenancy by deed, as a joint tenant can, for neither can alien so as to bind the other. . . . Divorce *vinculo* does not destroy the estate, and the *jus accrescendi* takes effect, upon the death of the one first dying.

Except insofar as absolute divorce is now deemed to transform the tenancy into one in common, *Stewart* v. *Bleau's Estate*, 102 Vt. 273, 276–77, 147 A. 692, 693 (1929), these principles remain the law today, *Cooperative Fire Insurance Ass'n* v. *Domina*, 137 Vt. 3, 5, 399 A.2d 502, 503 (1979). At the death of the first spouse the entire estate continues in the survivor.

It has been the law of this state, even before women acceded to their full beneficial life interests in the tenancy, that the husband "cannot do any act to the prejudice of the ulterior rights of the wife." *Laird* v. *Perry*, 74 Vt. 454, 461, 52 A. 1040, 1041 (1902) (quoting *Washburn* v. *Burns*, 34 N.J.L. 18, 20 (1869)). The "ulterior rights" of the spouse include legal

ownership of the whole estate from the date of acquisition. This principle is not changed by the recognition of the wife's separate lifetime interests which were formerly submerged in the husband's marital rights over his wife's property.

Since the enactment of the married women's property acts, 15 V.S.A. ch. 3, this Court has made it clear that during the lifetime of both spouses each has a "separate estate" in the entirety. *Sargent* v. *Platt,* 111 Vt. 185, 188, 13 A.2d 195, 197 (1940). This "separate estate" consists of the powers of management and control, and the right to enjoy the rents, profits and income from the land. *Id.*

Despite these changes in the lifetime benefits of the tenancy, this Court has declined to allow one spouse alone the power to encumber the estate by the entirety. *Rose* v. *Morrell,* 128 Vt. 110, 112–14, 259 A.2d 8, 10–11 (1969); *Laird* v. *Perry, supra,* 74 Vt. at 461, 52 A. at 1041–42. Moreover, where both spouses do join in an agreement respecting the property, both are bound to its consequences and cannot for their separate benefits treat the estate as divided. *Cooperative Fire Insurance Ass'n* v. *Domina, supra.* No act of one spouse can alter the legal title which each holds in the whole estate. On the death of the first spouse, the survivor continues in his legal interest in the entirety as he had from the time of its vesting in the marital unit, irrespective of any attempt by the other spouse to alien or encumber the estate. There is, however, change in the survivor's estate, but it is equitable. His interest is no longer subject to the "ulterior rights" or "separate estate" of his spouse.

The rulings of this Court with respect to the character of the legal estate after divorce do not alter this result. In fact, this Court reaffirmed its interpretation of the legal estate in the very case in which it held that, upon divorce, the estate by the entirety is transformed into one in common. *Stewart* v. *Bleau's Estate, supra.* There the Court distinguished the effect on the estate of divorce from that of death as follows:

> [T]he continued existence of the estate would seem naturally and necessarily to depend upon the continued legal unity of the two persons to whom the conveyance was made. The survivor takes the whole in case of death, because that event has terminated the marriage and the

consequent unity of person. An absolute divorce terminates the marriage and unity of person just as completely as does death itself, only instead of one as in the case of death there are in the case of divorce two survivors of the marriage, and there are from the time of such divorce two living persons in whom the title still remains.

*Id.* Thus, it is only because there is a termination of the unity of the jural entity by judicial act *and* two surviving persons to accede to its interests that the law transforms the estate of tenancy by the entirety into one in common. A death of one spouse remains the only way in which a sole surviving spouse can enjoy independent legal powers and rights in the estate held of the marriage.

It is apparent, therefore, that each tenant by the entirety owns the whole legal estate from its original acquisition, that one spouse cannot alter the legal estate of either spouse in the entirety, and that at the death of the first, the surviving spouse acquires no new legal rights, but continues in his interest in the entirety. Nevertheless, upon the death of the first spouse, the survivor does acquire the benefits of an estate free from the separate lifetime interest and "ulterior rights" of the other spouse. This Court is now called upon to apply these principles to the rights of a murdering cotenant by the entirety in light of *In re Estate of Mahoney, supra.*

In *Mahoney* the probate estate of one spouse was held to have passed to the slayer spouse pursuant to 14 V.S.A. § 551. (This was prior to the enactment of subsection (6) in 1972.) The Court recognized, however, that equity would impose a constructive trust upon the property passing, under which the slayer would be obliged to transfer legal and equitable title to the decedent's heirs. *Id.* at 35, 220 A.2d at 478. In arriving at this conclusion, the Court rejected two alternative approaches to the problem of the slaying heir. The first of these would have permitted the slayer to obtain all legal and equitable title passing to him by operation of law without the interposition of any equitable consideration that but for the slaying the slayer would not have been so benefited. The second approach rejected by this Court would have equity prevent legal title from passing to the slayer at all. *Id.* at 33, 220 A.2d at 477.

The approach adopted by the Court was summarized as follows:

> The legal title passes to the slayer but equity holds him to be a constructive trustee for the heirs or next of kin of the decedent. This disposition of the question presented avoids a judicial engrafting on the statutory laws of descent and distribution, for title passes to the slayer. But because of the unconscionable mode by which the property is acquired by the slayer, equity treats him as a constructive trustee and compels him to convey the property to the heirs or next of kin of the deceased.

*Id.* The Court adopted this view because through it "logic received its tribute, by holding that legal title passed," but equity was also done by denying the legal title holder the benefits of that passing. *Id.* Put another way, "[t]he principle . . . is that the slayer should not be permitted to improve his position by the killing, but should not be compelled to surrender property to which he would have been entitled if there had been no killing." *Id.* at 34, 220 A.2d at 478.

The Restatement of Restitution § 188 (1937) applies this principle to the situation before the Court, in which there has been a murder of a cotenant. It is stated as follows:

> Where two persons have an interest in property and the interest of one of them is enlarged by his murder of the other, to the extent to which it is enlarged he holds it upon a constructive trust for the estate of the other.

Comment b for this section states that with respect to joint tenants "if one of them murders the other, the murderer takes by survivorship the whole legal interest in the property, but he can be compelled to hold the entire interest upon a constructive trust for the estate of his co-tenant, except that he is entitled to one-half of the income for life. . . . The same rule is applicable to husband and wife holding as tenants by the entireties . . . ." This position also has the support of G. Bogert, Law of Trusts and Trustees § 478 (2d ed. rev. 1978), and V A. Scott, Law of Trusts § 493.2 (3d ed. 1967) (lists five alternative solutions, but endorses the Restatement approach with respect to joint tenancies in reasoning equally applicable to tenancies by the entirety).

There are also a significant number of well reasoned decisions in other jurisdictions adopting this view, preeminent of which is *Bryant* v. *Bryant*, 193 N.C. 372, 137 S.E. 188, 51 A.L.R. 1100 (1927). There the court stated that "[a]s a question of common law the homicide does not prevent the legal title from passing to the criminal . . . , but equity, acting in personam, compels the wrongdoer who has acquired the res to hold it as a constructive trustee of the person wronged . . . ." *Id.* at 377–78, 137 S.E. at 191, 51 A.L.R. at 1104. Recognizing that while the legal estate by the entirety continued solely in the surviving spouse by operation of law, but that equity acts in personam to prevent unjust enrichment, the court imposed a constructive trust on the entire estate subject to the surviving husband's life interest in the whole income from the property. (North Carolina still permitted a husband a usufruct on his wife's property.) See also *In re Estate of Perry*, 256 N.C. 65, 123 S.E.2d 99 (1961); *Homanich* v. *Miller*, 28 N.C. App. 451, 221 S.E.2d 739, *rev. denied*, 289 N.C. 614, 223 S.E.2d 392 (1976); *Porth* v. *Porth*, 3 N.C. App. 485, 165 S.E.2d 508 (1969). Massachusetts also appears to have adopted this rule. See *Diamond* v. *Ganci*, 328 Mass. 315, 318, 103 N.E.2d 716, 718 (1952). Similarly, stating that although the entire legal title rests in the slayer, equity imposes a constructive trust on the whole excepting one-half of the rents, profits and income for the slayer's life for the benefit of the victim's heirs, Oregon has adopted the Restatement approach. (Oregon recognizes no husband's usufruct on the wife's property.) *Hargrove* v. *Taylor*, 236 Or. 451, 455, 389 P.2d 36, 39 (1964). See also *Anderson* v. *Grasberg*, 247 Minn. 538, 78 N.W.2d 450 (1956); *Vesey* v. *Vesey*, 237 Minn. 295, 54 N.W.2d 385, 32 A.L.R.2d 1090 (1952).

In *Colton* v. *Wade*, 32 Del. Ch. 122, 80 A.2d 923 (1951), it was held that the surviving slayer spouse held legal title as constructive trustee in favor of the decedent on the entire estate subject to a life interest of the slayer in the commuted value of one-half the net income for his life expectancy. That life interest was "required to prevent infringement of vested rights." *Welch* v. *Welch*, 252 A.2d 131, 133 (Del. Ch. 1969). There is support for this view in New York, see *In re Hawkins' Estate*, 213 N.Y.S.2d 188, 191 (Sur. Ct. 1961), and New Jersey, see *Neiman* v. *Hurff*, 11 N.J. 55, 62, 93 A.2d 345, 348 (1952);

*Whitney* v. *Lott*, 134 N.J. Eq. 586, 591, 36 A.2d 888, 891 (1944) (murder and suicide).

In the case at bar the Restatement rule, as applied in *Hargrove* v. *Taylor, supra,* is consistent with Vermont law. The rule recognizes that at common law each tenant by the entirety owns the whole legal interest from the date of original acquisition and does not acquire *legal* interest upon the death of the first spouse to die, as we have stated in *Town of Corinth* v. *Emery, supra.* At the same time, the rule acknowledges that the surviving tenant by the entirety accedes to beneficial interests upon the death of his spouse. Compare *Laird* v. *Perry, supra,* with *Sargent* v. *Platt, supra.* Moreover, the rule does not require that this Court give the felonious act any legal significance, but rather permits equity to impose a constructive trust because "the legal title to property is obtained by a person in violation, express or implied, of some duty owed to the one who is equitably entitled, and . . . the property thus obtained is held in hostility to his beneficial rights of ownership." 4 Pomeroy's Equity Jurisprudence § 1044 (5th ed. 1941). See *In re Estate of Mahoney, supra,* 126 Vt. at 34, 220 A.2d at 477; *Lorenz* v. *Rowley,* 122 Vt. 480, 485, 177 A.2d 364, 368 (1962).

Most importantly, this rule is fully consistent with the principle enunciated in *In re Estate of Mahoney, supra,* requiring that the slayer not be permitted to improve his position by killing, but not be compelled to surrender that to which he would otherwise be entitled. It follows *Mahoney* in recognizing that legal title in the whole is vested in the slayer and cannot be denied him, but strips the slayer of the beneficial enjoyment of accession to all lifetime rents, profits and income and the power of unilateral alienation. It restores to the heirs of the decedent spouse the "ulterior rights" of the spouse which the slayer prejudiced by his felony, compare *Laird* v. *Perry, supra,* and *Sargent* v. *Platt, supra,* with *In re Estate of Mahoney, supra,* because equity irrebuttably presumes that the slain spouse would have outlived the slayer, *Nieman* v. *Hurff, supra,* 11 N.J. at 62, 93 A.2d at 348. The rule permits the slayer to retain one-half the value of the rents, profits and income of the property for his lifetime, since he would have enjoyed these in any event, but deprives him of any other benefit.

The court below held and the appellees here contend that the proper division of the property of the slayer and his first wife held in tenancy by the entirety is a fifty-fifty split of all property interests from the death of the slayer's first wife. This result is obtained by giving to the felonious slaying the legal effect of terminating the marriage (and hence the marital unity of person) and transforming the tenancy by the entirety into one in common. See *Hogan* v. *Martin*, 52 So. 2d 806 (Fla. 1951); *Ashwood* v. *Patterson*, 49 So. 2d 848 (Fla. 1951); *In re Estate of Nunnelley*, 343 So. 2d 657 (Fla. Dist. Ct. App. 1977); *Bradley* v. *Fox*, 7 Ill. 2d 106, 129 N.E.2d 699 (1955); *National City Bank* v. *Bledsoe*, 237 Ind. 130, 144 N.E.2d 710 (1957); *Cowan* v. *Pleasant*, 263 S.W.2d 494 (Ky. 1953); *Pannone* v. *McLaughlin*, 37 Md. App. 395, 377 A.2d 597 (1977); *Goldsmith* v. *Pearce*, 345 Mich. 146, 75 N.W.2d 810 (1956); *Budwit* v. *Herr*, 339 Mich. 265, 63 N.W.2d 841 (1954); *Grose* v. *Holland*, 357 Mo. 874, 211 S.W.2d 464 (1948); *Barnett* v. *Couey*, 224 Mo. App. 913, 27 S.W.2d 757 (1930); *In re Cox' Estate*, 141 Mont. 583, 380 P.2d 584 (1963).

The theory is an attractive one for several reasons. On the surface, it would seem to carry forward the equality of beneficial interests enjoyed by the tenants during their lives, see *Sargent* v. *Platt, supra*, by awarding their apparent successors in interest equal equitable and legal title. It also provides a result consistent with that obtained where the tenants die simultaneously or there is a divorce decreed. In each of these circumstances legal title passes by operation of law to the tenants or their successors as tenants in common (absent an alternative disposition by court decree in a divorce). *Stewart* v. *Bleau's Estate, supra;* 14 V.S.A. § 623.

However attractive these results may be, the theory is indefensible. The cases which purport to reduce tenancies by the entirety to tenants in common in this situation have employed two rationales. The first provides that these tenancies are reduced to tenancies in common, because no survivorship is recognized by the law where the first tenant's death is caused by the survivor's felony. See *Pannone* v. *McLaughlin, supra*, 37 Md. App. at 404, 377 A.2d at 603, and cases cited there. Second, it is said that the felonious act terminates the marital relation and thus one of the unities which gives rise to this peculiar tenancy. *Id.* at 405, 377 A.2d at 603. Both

theories merely state the court's conclusion that a tenant may unilaterally terminate the tenancy by voluntary homicide. The very same felonious conduct, however, if it does not result in the death of the cotenant, has never been held to terminate the unity of marriage in itself. Furthermore, the actual death of a tenant by the entirety ordinarily does not negate the existence of the tenancy before death, or its operation after death. Clearly, neither rationale justifies the approach which renders the tenancy by the entirety a tenancy in common, unless this Court finds that one spouse can unilaterally terminate the estate by homicide.

Our law is to the contrary. No unilateral act of a spouse can extinguish the estate by entireties. The husband, for example, cannot transfer or encumber the property without his wife's concurrent transfer. *Town of Corinth* v. *Emery, supra.* The reason for this is that the estate is held by one jural entity, the marital unit. That unit is not created or destroyed by a unilateral act of one spouse. It is created only by lawful marriage. *Stewart* v. *Bleau's Estate, supra.* See also *Stahl* v. *Stahl,* 136 Vt. 90, 91, 385 A.2d 1091, 1092 (1978). It is terminated only by lawful divorce or at the moment of the death of one spouse. *Stewart* v. *Bleau's Estate, supra,* 102 Vt. at 276, 147 A. at 693. As the Wisconsin court said, "[w]e decline to add murder of a cotenant to the approved methods by which one joint tenant [or tenant by the entirety] may convert the joint tenancy [or tenancy by the entirety] of the other into some different interest, thereby, himself, acquiring an estate which he did not have before his crime." *In re King's Estate,* 261 Wis. 266, 273, 52 N.W.2d 885, 889 (1952). See also *In re Estate of Pinnock,* 83 Misc. 2d 233, 371 N.Y.S.2d 797, 802 (Sur. Ct. 1975).

One way in which this transformation has been explained is by analogy with the simultaneous death act, *Barnett* v. *Couey, supra,* 224 Mo. App. at 923, 27 S.W.2d at 762, and the effect of divorce, *Pannone* v. *McLaughlin, supra; National City Bank* v. *Bledsoe, supra,* 237 Ind. at 141, 144 N.E.2d at 715 (quoting *Barnett* v. *Couey, supra,* 224 Mo. App. at 919, 27 S.W.2d at 760); *Budwit* v. *Herr, supra,* 339 Mich. at 279, 63 N.W.2d at 847 (quoting *Hogan* v. *Martin, supra,* 52 So. 2d at 806); *Grose* v. *Holland, supra,* 357 Mo. at 879, 211 S.W.2d at 467. In cases where there is a simultaneous death or a divorce,

however, there is no voluntary conduct by the tenants which *by operation of law* transforms these tenancies into tenancies in common. Only the fortuity of death or the decree of divorce severs the estate. In such cases there is no survivor in fact, as all the tenants are dead or all are alive. It is only because there can be no survivor that the law divides the property interests as though the survivorship incident of the estates did not exist. *Stewart* v. *Bleau's Estate, supra,* 111 Vt. at 277, 147 A. at 693; see 14 V.S.A. § 623. This situation does not exist where one tenant murders another. The analogy does not apply.

Several peculiar results obtain where a court purports to split the tenancy by the entirety into a common tenancy upon the spousal murder. While *Mahoney* prevents a murderer from benefiting from his felony without depriving him of his vested legal rights, the effect of a fifty-fifty split is to deny the existence of half the *legal* interest in the whole which the slayer held from the *original* acquisition of the property. *Mahoney* requires the recognition of the slayer's entire legal title, but permits equity to impose a constructive trust on that interest, because *beneficial interests* wrongfully pass to the slayer. Furthermore, if it were conceded that the tenancy by the entirety is transformed into a tenancy in common, the appropriate remedy would not be a constructive trust, but a partition with accounting, since legal title is held by the claimants as tenants in common upon the happening of the felony.

Finally, the theory which splits a tenancy by the entirety into a common tenancy is based upon cases where the claimants through the slain spouse requested only half of the estate, not the entirety. *Grose* v. *Holland, supra; Barnett* v. *Couey, supra; In re Cox' Estate, supra.* As the Minnesota court has noted in *Vesey* v. *Vesey, supra,* 237 Minn. at 303, 54 N.W.2d at 390, 32 A.L.R.2d at 1097, the leading cases from Missouri did not analyze the situation in the context of a demand by the heirs of the slain spouse for the whole estate. The holding in *Barnett,* in fact, was confined to the law of the case by the court. *Supra,* 224 Mo. App. at 923, 27 S.W.2d at 762. Subsequent decisions have either blindly followed these cases, see e.g., *Cowan* v. *Pleasant, supra,* or rationalized the result on the theories outlined above, see e.g., *Ashwood* v. *Patterson, supra; Bradley* v. *Fox, supra; National City Bank* v. *Bledsoe,*

*supra; Goldsmith* v. *Pearce, supra; Pannone* v. *McLaughlin, supra.* We cannot rely upon such weak authority in the disposition of this case.

In light of our cases and the strength of cases supporting the Restatement position, we should adopt the rule of the Restatement of Restitution § 188 as it applies to tenancies by the entirety. The slayer and his successor in interest should be deemed to have obtained legal title to the entirety, but be held a constructive trustee for the entire estate, subject to the slayer's right to the value of the rents, profits and income of one-half the estate for the slayer's lifetime. The order below should be reversed and the case remanded for disposition not inconsistent with this opinion.

I am authorized to state that Mr. Justice Hill joins in this opinion.